67    57
77a  295

THE PEOPLE *ex rel.* The Gilman, Clinton and Springfield Railroad Company

*v.*

THE SUPERVISOR AND TOWN CLERK OF THE TOWN OF SANTA ANNA.

1. MUNICIPAL SUBSCRIPTION—*election. must be held according to the law governing.* Where a special law relating to corporate subscriptions to the capital stock of a railroad company provided that "all elections had under or by virtue of this act, shall be taken and held to be general elections, and conducted in the manner provided by the laws of this State for general elections," it was *held*, that a township election without any registration of voters, presided over by a moderator, the same as in town meetings, there not being three judges and two clerks of the election, was illegal, and conferred no authority to make a subscription on behalf of the town, and a subscription on such a vote was a nullity.

2. SAME—*Estoppel.* Where an election to determine whether or not a township will subscribe to the stock of a railroad company was illegal and void, because not held and conducted by the proper officers, and the supervisor, after such election, made the subscription, it was urged that after such subscription, and the building of the road, the town was estopped from denying the validity of the same: *Held*, that the town was not so estopped.

This was an application in this court by the Gilman, Clinton and Springfield Railroad Company, against the supervisor and town clerk of the town of Santa Anna, to issue and deliver to the company $25,000 in the bonds of the town, in pursuance of an election on the question and the subscription by the supervisor. The facts appear in the opinion of the court.

Messrs. STUART, EDWARDS & BROWN, and Messrs. FULLER & MOORE, for the relators.

Messrs. WELDON & BENJAMIN, for the respondents.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This is an application for a *mandamus* to compel the supervisor and town clerk of the town of Santa Anna, in De Witt county, to issue the bonds of the town to the petitioner, in payment of $25,000 of stock alleged to have been subscribed to petitioner's road. The respondents answer, setting up the illegality, and consequent invalidity of the election at which it is claimed the subscription was voted. The petitioner demurs to the return, and the case is presented to us on the demurrer.

The 7th section of the act authorizing the vote in question reads as follows:

"All elections had under or by virtue of this act shall be taken and held to be general elections, and conducted in the manner as provided by the laws of this State for general elections; and all illegal voting, false swearing or frauds done or committed, shall be governed and punished as provided for by the laws of this State in force at the time of such election."

It will be observed that this section requires, as explicitly as language can do so, that the election shall be conducted as general elections are required to be conducted by the laws of the State. The 1st section of the 18th article of the township organization act provides that the supervisor, assessor and collector shall be *ex officio* judges of elections. This has reference to general elections, which are recognized in the same act as entirely distinct from the annual town meetings, held in April, when town officers are elected, and other town business is transacted. The 5th article of the act relates to the manner of conducting town meetings, and in the 9th section it is provided that "no person shall be a voter at any town meeting, unless he shall be qualified to vote at general elections." The town meetings are presided over by a moderator chosen at the meeting, and the 10th section

of the article just quoted provides that when a person offering to vote is challenged, the moderator " shall proceed thereon in like manner as the judges at the general elections are required, adapting the oath to the circumstances of the town meeting."

The return in this case avers that the alleged election was held as a mere town meeting, was presided over by a moderator chosen at the time, and that neither the supervisor, assessor nor collector, participated in holding the election. The return further sets up that there was no registry of voters, although the act required thirty days notice to be given of the election, thus affording the time required by law for a registry.

The demurrer admits these allegations, and we have only to decide on their sufficiency.

It is urged by counsel for petitioner, that as the supervisor subscribed the stock, and as the road has been built, the town should be held estopped, on every principle of honesty and good faith, from now denying the validity of the subscription. We admit the doctrine of estoppel *in pais* is sometimes applicable to municipal corporations, and it has been so applied by this court, as in the case of *Maher* v. *City of Chicago*, 38 Ill. 266. Wherever a town or city, through its constituted authorities, procures money or labor, to be expended under its direction and for its supposed benefit, courts will unwillingly listen to the defense of *ultra vires*. But is this such a case? We do not so regard it.

The railway company was not building its road for the benefit of this town, or by its solicitation. The road was not to belong to the town when built. The town would not control its operations. It can not be supposed that the vote to subscribe $25,000 by the respondent, caused the building of the road, or had any appreciable influence thereon. It can hardly have led to the expenditure of money that would not otherwise have been expended. The sum voted would not build and equip a single mile of the road at the average

cost of railways in this State. . We can not regard the town as in the position of having had this work done for its own benefit or at its own request, and then refusing to pay for it. The citizens of the town were under no obligation to interfere with the progress of the work while the road was in process of construction, in order to save themselves from liability on an illegal vote to subscribe for stock. Their intention to contest the validity of the subscription gave them no right to interfere with the building of the road, and we are not aware by what steps they could have arrested its construction. Their silence, therefore, was not a ratification. The law imposed upon them no duty to oppose the progress of the work, as it furnished them no means of doing so. As disclosed by this record, there were two hundred and ninety-eight voters in this town at the preceding election. At the town meeting, when the vote in question was taken, ninety-four votes were cast for, and seventy-five against subscription. The subscription was thus voted by less than one-third of the actual voters of the township, and, as has been shown by experience, it is probable the majority was made up of those who would pay but a small portion of the taxes. The bonds have not been issued and passed into the hands of innocent purchasers. The case is unencumbered by considerations growing out of their equities. The supervisor has subscribed, in the name of the town, to a joint-stock enterprise to which he had no right to subscribe unless authorized by the vote of the people in the manner pointed out by law. If his subscription was not legally authorized in the first instance, so as to bind the tax-payers of the town, we can see nothing in this record that should estop the town from denying his authority.

As to the invalidity of the election, we can not doubt. The act authorizing the vote to be taken, expressly required it to be attended by all the restraints against illegal voting which are required in general elections.

In the case of *The People* v. *Ohio Grove Town*, 51 Ill. 196, we held a registry was not necessary to the validity of the election then under consideration, because the law only required ten days notice of the election, and the registry act requires the board of registry to meet three weeks before the election. The legislature, therefore, could not have intended a registry in that case. But in this, the act expressly says the election shall be taken and held to be a general election, and conducted as required by the laws of this State in regard to general elections. Under this provision it seems difficult to avoid the conclusion that a registry was indispensable.

But whatever might be our ruling if the case turned entirely upon that point, the fact that the election was a departure from the law in another and material particular, admits of no denial. The election, as already stated, was conducted as an ordinary town meeting, presided over by a moderator, while the law required that the supervisor, assessor, and collector should be the judges of the election, and, of course, hold the same. The person chosen as moderator may have been equally competent, but it is sufficient to say he was not the officer authorized by the law to discharge this duty. It is like a judicial proceeding where there is no jurisdiction. The law required the election to be held by one set of officers, and it has been held by another. That ends the argument. The supervisor, when he made this subscription, had not been authorized to do so by a vote of the people, taken in the manner required by the law. The subscription was, therefore, a nullity. The application for a peremptory *mandamus* must be refused. See *People ex rel.* v. *Town of Laenna, post*, 65.

*Mandamus refused.*