## CHARLES E. LIPPINCOTT *et al.*

### *v.*

## THE TOWN OF PANA *et al.*

1. MUNICIPAL BONDS—*not authorized by power to donate to railroad.* It has been held, where a law authorizes the donation of money by a municipal corporation to aid in the construction of a railroad, and provides for levying a tax to raise the amounts donated as they become due, neither· the municipal corporation, nor its officers, have power to borrow money or to issue bonds in payment of such donation, and bonds issued in payment thereof are void.

2. SAME—*steps preliminary to election must be observed.* Under a charter of a railway company authorizing any town to donate to the company any sum not exceeding $30,000, upon an affirmative vote at an election to be held for the purpose, and providing that no such election should be held until the company should file with the county and town clerks a proposition to the inhabitants of the town, and publish the same, such proposition is a necessary preliminary step to the calling of an election, and where the sum of $100,000 was voted by a town as a donation, without such initiatory step to the election, it was *held*, that the donation could not be sustained under the power given in such charter.

3. SAME—*issued on illegal election are void.* Where an amendment to a railroad charter authorizes a subscription or donation by towns in aid of the road, upon an affirmative vote of the people, at an election to be held and conducted, and returns thereof to be made, as in general elections, an election conducted as a special town meeting, presided over by a moderator, and not held by three judges, as under the general Election law is required, will be a nullity, and confer no power to issue bonds of the town in payment of the subscription or donation voted, and such bonds, if issued, will be void.

4. SAME—*when may be ratified.* If municipal bonds are issued without authority of law, and are, therefore, void, the subsequent levy of taxes and payment of interest thereon will not render them valid, even in the hands of innocent purchasers, but it is otherwise if the bonds are voidable only for irregularity in the election or their issue.

5. SAME—*recitals in, when no protection.* Where there is an entire absence of power, as distinguished from a defective execution of a power, the recitals of those invested with the ministerial duty of issuing municipal bonds will afford no protection to even *bona fide* holders for value of such bonds, and such holders are bound to take notice of the want of authority to issue them.

6. MUNICIPAL DONATION—*when invalid, not saved by new constitution.* The saving clause in the section of the constitution of 1870, which prohibits municipal subscription or donation to private corporations, applies only when the subscription or donation had been authorized by vote under then existing laws prior to the adoption of that instrument. A donation voted at an election which was void, can not be consummated and carried into effect after the adoption of the constitution which takes away the power.

7. ELECTION—*when void.* An election is not void although held by persons who are not officers *de jure,* if they are officers *de facto,* and act in good faith under color of authority. Where an election is required by law to be held and conducted the same as in general elections, which law requires three judges of election and two clerks, and the election is held by one acting in the capacity of moderator of a town meeting, with but one clerk, it will be absolutely void, and can not form the basis upon which any rights can be created or enforced.

APPEAL from the Appellate Court of the Third District; the Hon. CHAUNCEY L. HIGBEE, presiding Justice, and the Hon. OLIVER L. DAVIS and Hon. LYMAN LACEY, Justices.

This was a bill by the town of Pana and others, tax-payers, against Charles E. Lippincott, State Auditor, the State Treasurer, county clerk and collector of Pana, in the circuit court of Christian county. Its object was to enjoin the assessment and collection of any tax to pay the interest on bonds issued

by the town of Pana to the Springfield and Illinois South-eastern Railroad Company, with a prayer that the bonds might be declared void.

The circuit court, the Hon. H. M. VANDEVEER, Judge, presiding, dissolved the temporary injunction and dismissed. the bill. From this decree the complainants prayed and per-fected an appeal to the Appellate Court of the Third District. That court, at its November term, 1877, reversed the decree, with directions that the circuit court grant the prayer of the bill. From this decree the defendants in the original bill prosecuted this appeal.

Messrs. THORNTON & HAMLIN, Mr. J. W. KITCHELL, and Mr. J. C. ESSICK, for the appellants.

Messrs. HENRY & DOVE, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The Pana, Springfield and Northwestern Railroad Company was incorporated February 16, 1865. Priv. Laws 1865, vol. 2, p. 192. The charter of said corporation was amended April 15, 1869. Priv. Laws 1869, vol. 3, p. 330.

The substance of the original act and amendment thereto, as regards the matter of subscriptions to the capital stock of said company by townships, was to the effect that any town in any county which had adopted township organization might subscribe to its capital stock, in any sum not exceeding $50,000, if authorized by a vote of the people, but that no such vote should be taken unless at a regular election for town or county officers. No power was given to townships to make donations to the corporation.

As the bonds here in controversy were voted and issued as a donation and not as a subscription, and amounted to $100,-000, and there is no pretence they were voted at a regular election for town or county officers, and as they do not purport to have been issued under or by virtue of either said charter

or amendment, it is not perceived either of said acts shed material light upon the matter of the validity of these bonds.

The act to incorporate the Illinois Southeastern Railway Company was passed February 25, 1867. Priv. Laws 1867, vol. 2, p. 750.

Sections 9 and 10 of said charter empowered any town in any county under township organization to donate to said company any amount, not to exceed $30,000, if a majority of all the votes cast be for such proposition, at an election which should be held, canvassed and returned as other regular town elections. It was also required, no such election should be held until the directors of said company had filed a proposition to the inhabitants of said town with the county clerk of the county wherein such town was situated, and a copy of the same with the clerk of the town, and that if there was a newspaper published in said county, then said proposition should be published in full in the same. Said statute, after providing for the posting of notices of the time and place of such election, and making other provisions in reference thereto, contained this requirement: "And such county clerk shall, upon the application of the company, after the donation so voted by any such town shall have become due or payable, under the terms and conditions of the proposition upon which said election was ordered, compute and assess upon all the taxable property in said town an amount sufficient to pay such donation, or any part or installment of the same so then being due and payable, which taxes so assessed shall be collected as other taxes, and the taxes so collected shall be paid to the treasurer of said company."

In *Town of Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562, it was held by this court that where a law authorizes the donation of money by a municipal corporation to aid in the construction of a railroad, and provides for levying a tax to raise the amount to be donated, then neither such municipal corporation nor its officers have power to borrow money or to issue

bonds in payment of such donation, and that bonds issued in payment thereof are void.

Moreover, the sum here claimed as donated is $100,000, whereas the act expressly limited the amount, and required it should not exceed $30,000; and it clearly appears the directors of the company did not make a proposition to the inhabitants of the town, as required by the enabling act, and by that act they, and they alone, had power to initiate the election. We think it manifest this donation can not be held valid by virtue of this original charter of the Illinois Southeastern Railway Company.

The charter of this latter company was amended on the 24th day of February, 1869. (Priv. Laws 1869, vol. 3, p. 308.) Thereby, townships in counties under township organization were empowered to subscribe to the stock of said company, or make donations to said company, to aid in constructing or equipping said railway, "provided, that no such subscriptions or donations shall be made until the same shall be voted for, as hereinafter provided."

There is nothing in this last mentioned act expressly limiting the amount of such subscription or donation, and no reference thereto further than the requirement the written application therein provided for, requesting an election be held, should state "the amount, and whether to be subscribed or donated, and the rate of interest and times of payment of the bonds to be issued in payment thereof." For the purposes of this case we may, without examination, admit this amendment authorized a subscription or donation to an amount limited only by the amount stated in the written application. The act, among other things, provided, in section 10, "such elections shall be held and conducted, and returns thereof made, as general elections provided by law in this State," and contained a proviso, "that at any election held under the provisions of this act it shall not be necessary to cause a registration of the voters."

The Springfield and Illinois Southeastern Railroad Com-

pany was the result of a consolidation of the Pana, Springfield and Northwestern Railroad Company and the Illinois Southeastern Railway Company. The charters of both of the original and constituent corporations expressly authorized consolidation, and the general law of the State then in force provided for consolidation of railroad companies, and enacted that "said companies, when so consolidated, shall have all the powers, franchises and immunities which said respective companies shall have by virtue of their respective charters before consolidation." Laws 1854, p. 9, secs. 1 and 2; *Robertson* v. *City of Rockford,* 21 Ill. 452.

We deem it unnecessary, here, to determine whether the amendatory act of February 24, 1869, either on the theory it embraces the whole subject matter of the prior statute or on the theory there is a palpable repugnancy between the two enactments, must be taken as a repeal, by implication, of the former statute or any of its provisions, or whether it is to be regarded as auxiliary and cumulative to the old law, or simply as changing and modifying that old law in some respects. In the view we take of the case, the result, in either event, is the same, and the inquiry is superfluous.

It appears from the record, the election at which the alleged donation, with various conditions, was voted to the consolidated railroad company, was held as an ordinary special town meeting, presided over by a moderator then and there chosen and sworn as such. The record of the meeting and of the proceedings thereof, including the determination as to the proposed donation and other matters submitted to it, was signed by the moderator and town clerk. The vote on the donation was by ballot.

As we have seen, the amendment to the charter of the Illinois Southeastern Railway Company required that the election should be held, conducted and returns thereof made as general elections provided by law in this State.

In counties under township organization, the statute expressly provided "the supervisor, assessor and collector of the

town shall be *ex officio* judges of all elections in their town, except as otherwise provided by law."

In the case of *The People ex rel.* v. *Town of Santa Anna*, 67 Ill. 57, the act authorizing the vote for the subscription required that "all elections had under or by virtue of this act shall be taken and held to be general elections, and conducted in the manner as provided by the laws of this State for general elections;" and it appeared the election there in question was held as a mere town meeting and was presided over by a moderator chosen at the time, and that neither the supervisor, assessor nor collector participated in holding the election. We there held the election invalid, and said: "The election was conducted as an ordinary town meeting, presided over by a moderator, while the law required that the supervisor, assessor and collector should be the judges of the election, and of course hold the same. The person chosen as moderator may have been equally competent, but it is sufficient to say he was not the officer authorized by the law to discharge this duty. It is like a judicial proceeding where there is no jurisdiction. The law required the election to be held by one set of officers, and it has been held by another. That ends the argument. The supervisor, when he made this subscription, had not been authorized to do so by a vote of the people taken in the manner required by the law. The subscription was, therefore, a nullity."

In *The People ex rel.* v. *Town of Laenna*, 67 Ill. 65, the legislative act involved was the same as that in the case just cited, and the election was conducted entirely by the moderator and the town clerk in the same manner as an ordinary town meeting is conducted. It was there said, "the enabling act means precisely what is expressed, that the election shall be taken and held to be a general election, and have all the requisites of such an election. There must be judges and clerks; there must be a registry of voters, and all else required by the general election law." And in the same case it was further said: " The relators, when they undertook the work, knew, or might

have known, the manner in which the election was conducted. It was their duty to know it was not conducted according to the law authorizing an election. It is a question of power, and the hardships or injustice of the case demand no consideration. This determines the case."

In the cases where these decisions were rendered the bonds had not been issued, but in at least one of them, equities of the complaining railroad company had intervened. The court decided it was a question of power, that it was like a judicial proceeding where there was no jurisdiction, and that a subscription based on such an election was a nullity.

In this case the bonds have been issued and have passed into the hands of innocent holders, and the town has paid interest thereon for three years; and the question arises whether it and its tax-payers are estopped thereby from denying the validity of the bonds.

If the bonds are absolutely void, the defence may be interposed, but if only voidable, then it may not.

An election is not void when it is held by persons who are not officers *de jure*, but are officers *de facto*, and act in good faith under colorable authority. Here, the law provided for a board of three judges of election, and designated the supervisor, assessor and collector as such board. Had a majority of the board acted, or had one of the board, together with one or more other persons assuming to act as judges of the election, presided thereat, or had three, or even two persons, and they all other than those designated by law, officiated under color of an appointment, however defective, and assumed to act as judges of the election and as the board designated by the law, a different question would have been presented. Perhaps there might then be ground to hold such persons to be *de facto* officers and constituting a *de facto* board of election judges. But here, there was no assumption to act as any board; there were no persons pretending to be the judges of an election; there were no persons appointed or designated in any manner to take the places of the *de jure* officers, nor were there even

persons who, as intruders or otherwise, assumed to officiate as an election board or to be *de facto* or temporarily the officers or judges designated by law.

The case is this: The law required, as a condition precedent· to the existence of the power to issue bonds, an affirmative vote at an election held and conducted as a general election. There not only was no such election, but there was no pretence of holding such an election. At the election held, not only the officers designated by law failed to act, but no persons took upon themselves to fill their places, temporarily or otherwise, or assumed to act and perform the duties of such officers. On the contrary, one other person, who was chosen to fill another and a different office, that of moderator of a special town meeting, assumed, in his character of such moderator, functions the law had expressly delegated to other and different officers. The election, to be other than void, should have been held and conducted, if not by the tribunal designated and authorized by the statute, at least by persons assuming to act as such tribunal. It was essential to the exercise of the power conferred, there should be an election at least purporting to be held as a general election. The township had no power to substitute a town meeting for an election.

If the sheriff of a county, assuming to act only as sheriff, should perform a duty the law imposed exclusively upon the county clerk, it could hardly be successfully claimed that such sheriff was, in the performance of such act, a *de facto* county clerk.

One of the separate sections of the constitution of 1870 reads as follows:

"No county, city, town, township or other municipality, shall ever become a subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however,* that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized under existing laws by

a vote of the people of such municipalities prior to such adoption."

We may admit a donation to be within the saving clause of the proviso. *C. and I. R. R. Co.* v. *Pinckney,* 74 Ill. 277; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562. Yet, the inquiry becomes pertinent, what was the legal *status* of this particular donation when this constitutional provision went in force in 1870? At that time the bonds had not been issued, nor is it even claimed the railroad company had done work or expended money on the faith of the proposed donation, or had accepted the conditions attached to the donation, or had given notice of the acceptance of the donation. It can not be claimed there was at that time any contract between the township and the railroad company to be impaired, or any right vested in the company.

Had, then, this donation been authorized under existing laws by a vote of the people of the township? Plainly not. The vote had was not under existing laws. The only existing law that would authorize a donation of $100,000, required a vote of the people at an election that should be held, conducted and returns thereof made as a general election. There was no law to empower the township to vote such donation at a town meeting. As we have seen from the decisions of this court in *The People* v. *Town of Santa Anna,* and *The People* v. *Town of Laenna,* the election had was like a judicial proceeding where there is no jurisdiction,—that there was no vote of the people in the manner required by the law, that there was no power conferred by the election, and that it was a nullity. If, after the new constitution went in force, the company had sought by *mandamus* to compel the issue of these bonds, it is evident from the cases cited they would have had no standing in court. There was at that time not only no existing legal obligation resting upon the township, but no power in it to issue these bonds. How, and by virtue of what, in 1873, did the power arise? The action taken since the adoption of the present constitution by either the

3—92 Ill.

officers or the people of the township is immaterial. The power to bind had been taken away by that instrument. In 1870 the township was bound by no obligation to the company, and, as there was no prior vote of the people under existing laws to authorize it to thereafter make a valid contract or donation, that which the township officers thereafter assumed to do in that regard was vain and void and of no effect. *Jackson Co.* v. *Brush et al.* 77 Ill. 59; *Middleport* v. *Ætna Life Ins. Co., supra.*

Each bond of the series recited it was "one of a series amounting to $100,000 issued by said township in compliance with the vote of legal voters thereof at an election held on the 30th day of April, 1870, by virtue of authority conferred by an act of the General Assembly of the State of Illinois entitled 'An act to incorporate the Illinois Southeastern Railway Company,' approved February 25, 1867, and an act amendatory thereof, approved February 24, 1869." The purchasers of these bonds could readily have ascertained, by reference to the first mentioned act, it did not authorize this donation or the issue of any bonds, and by reference to the last mentioned act, even if that act, as claimed, authorized a donation to an unlimited amount, that it required an affirmative vote of the people of the township at an election held and conducted as a general election; and the fact the election recited to have been held on the 30th day of April, 1870, was not and did not purport to be such an election was patent upon the face of the public records of the proceedings thereof.

It is the long established rule of this court, that where there is an entire absence of power as distinguished from a defective execution of a power, then the recitals of those invested with the ministerial duty of issuing municipal bonds will afford no protection to even *bona fide* holders for value of such bonds. *Force* v. *Town of Batavia*, 61 Ill. 100; *Williams* v. *Town of Roberts*, 88 Ill. 13, and authorities there cited.

If the bonds were issued without authority and were void,

the levy of taxes and payment of interest would not render them valid. *Schuyler Co.* v. *Farwell,* 25 Ill. 181 ; *Marshall Co.* v. *Cook,* 38 id. 48.

Indeed, if it be admitted that when the new constitution went in force there was no obligation and no power to enter into an obligation, it is difficult to perceive upon what theory or principle admissions or recitals thereafter made, or acts thereafter done, created a power in the very teeth of the constitution itself. It can hardly be the fundamental law of the land can thus be evaded, and the ministerial officers of a municipality confer upon it, by a mere recital, a power it is by that law explicitly prohibited from exercising.

The view we take of this case obviates the necessity of examining the numerous other points made therein and discussed by counsel.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*