The Chicago and Iowa Railroad Company *et al.*

*v.*

Isaac M. Mallory *et al.*

101    583
123    132
123    133
123    135
22a    136
101    583
42a    524

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. Municipal bonds—*burden of proof is on party asking their issue.* In a suit by a railroad company to enforce the issuing of bonds by a municipality for its use, the burden of proof is upon the railroad company to show affirmatively that the issue of the bonds was authorized by a vote of the people, had pursuant to a law providing therefor, prior to the adoption of the present constitution, and the law under which the election is held must be substantially complied with, or the election will confer no authority.

2. Same—*of the validity of the election.* Where a law for an election to determine whether a subscription, etc., shall be made by a town to aid a railroad corporation, provides that "such election shall be held and conducted, and returns thereof made, as is provided by the Township Organization law in towns organized under said law," an election held on the question, as in the case of an ordinary town meeting, presided over by one moderator only, with only one clerk, is void, and will confer no authority to issue the bonds of the town. Such a provision requires the election to be held by three judges and two clerks, as in general elections. The words "town meeting," and the word "election," as used in the Township Organization law, are not convertible terms.

3. Town meetings—*distinguished from an election.* The words "town meeting" have a definite and well settled meaning in the Township law, and are always used to describe the annual town meetings of the electors of the town for the purpose of electing town officers, and transacting such other business as the electors are authorized to transact, or special meetings of the electors for such purposes called pursuant to law. Such meetings are clearly distinguishable from "elections," when there is no other business transacted but to elect officers.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. William Brown, Judge, presiding.

Bill was filed in the circuit court of Ogle county, by Isaac M. Mallory, Daniel Shockley, and Samuel L. Bailey, tax-payers of the town of Flagg, in Ogle county, against the Chicago

and Iowa Railroad Company, and certain officers of said town of Flagg, to enjoin the issuing to the Chicago and Iowa Railroad Company of $50,000 of the bonds of the town, payable ten years after date, and bearing interest at the rate of ten per cent per annum, etc., as a donation to the railroad company. By an amendment made subsequent to the filing of the bill, the Chicago and Northwestern Railway Company, as a tax-payer of the town, was made a co-complainant, and W. H. Holcomb, receiver of the Chicago and Iowa Railroad Company, was made defendant.

Answer having been filed by the Chicago and Iowa Railroad Company, that company and its receiver filed its cross-bill, praying that the bonds sought to be enjoined be issued. Answers and replications were filed, properly presenting issues on the allegations of the original and cross-bills.

On the hearing, the cross-bill was dismissed, and the prayer of the original bill granted. An appeal was prosecuted from that decree to the Appellate Court for the Second District, where, on hearing, the decree of the circuit court was affirmed, and from that judgment this appeal is prosecuted.

Mr. Geo. W. Cothran, and Mr. Geo. W. Kretzinger, for the appellants, insisted that the charter of the railroad company controlled in all matters concerning the election, and that all its provisions in that regard had been complied with.

Mr. B. C. Cook, for the appellee the town of Flagg:

1. The burden of proof to show that the donation was authorized by a vote of the people of the town of Flagg, under existing laws before the adoption of the constitution, rests wholly on appellants. *Wright* v. *Bishop,* 88 Ill. 303; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 568; *Jackson County* v. *Brush et al.* 77 id. 65; *Springfield and Illinois Southeastern Ry. Co.* v. *Coldspring Township,* 72 id. 603; *Schall et al.* v. *Bowman et al.* 62 id. 321; *People* v. *Jackson County,* 92 id. 450.

2.   The law under which it is claimed that an election was held, did not provide for submitting the question at a town meeting, but at a regular election.   Secs. 56 and 68, Township law; *People* v. *Town of Laenna*, 67 Ill. 65; *People* v. *Town of Santa Anna*, 68 id. 28; *Lippincott* v. *Town of Pana*, 92 id. 24.

3.   No bonds, such as are claimed, were ever voted by the town.   The voters of the town had the right to prescribe the conditions upon which the donation should be made and the bonds issued.   *People* v. *Cass County*, 77 Ill. 440; *Jackson County* v. *Brush et al.* 77 id. 63; *People* v. *Glann et al.* 70 id. 234; *People* v. *Dutcher*, 56 id. 145; *People* v. *Chapman*, 66 id. 138; *Ramsey* v. *Hoeger*, 76 id. 444.

4.   The burden of proof is upon the party alleging the validity of the election, to show affirmatively that the vote was legal.   *Supervisors of Jackson County* v. *Brush*, 77 Ill. 59; *Town, etc.* v. *Ins. Co.* 82 id. 562; *People* v. *Board of Supervisors*, 92 id. 450, and authorities cited on the first point.

5.   The Township law referred to in the charter, provides that all elections held under it, except certain specified ones, of which this election was not one, shall be holden in the manner provided by the general Election law of the State. This is precisely equivalent to a direct provision in the charter that the election shall be holden in the manner provided in the general Election law, and brings the case directly within the cases of *Lippincott* v. *Town of Pana*, 92 Ill. 24, and *People* v. *Town of Santa Anna*, 68 id. 28.

6.   Under the Township law no returns are required to be made of the votes for the election of town officers.   It only requires a canvass of the votes.   Sec. 67, Township law.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Agreeing, as we do, with the view entertained of this case by the lower courts, it will be necessary to notice but a single question.

The burden is upon the railroad company asking the enforcement of the issuing of the bonds, to show, affirmatively, that the bonds are authorized to be issued by a vote of the people, had pursuant to a law providing therefor, prior to the adoption of the present constitution, (*Wright* v. *Bishop*, 88 Ill. 303, *Middleport* v. *Ætna Life Ins. Co.* 82 id. 568, *People* v. *Jackson County*, 92 id. 453,) and the law under which the election is held must be substantially complied with, or the election will confer no authority; and so it has been ruled, an election held and conducted as a special town meeting, under a law requiring the election to be held and conducted, and returns thereof to be made as in general elections, will be a nullity, and confer no power to issue bonds of the town. *Lippincott* v. *Town of Pana et al.* 92 Ill. 24; *People ex rel.* v. *Town of Santa Anna*, 67 id. 57; *People ex rel.* v. *Town of Laenna*, id. 65.

What is here claimed to have been an election authorizing the issuing of the bonds, was but a special town meeting, presided over by a moderator, and without the judges or clerks required in general elections. The question is, whether this is such an election as is authorized by the charter of the Chicago and Iowa Railroad Company, under the authority of which it is claimed to have been held.

The twelfth section of the charter of that company, (vol. 2, p. 163, Private Laws of 1869,) in providing for the holding of an election to determine whether subscriptions, donations, etc., shall be made by the town, employs this language: "And such election shall be held and conducted, and returns thereof made, as is provided by the Township Organization law, in towns organized under said law." Now, it will be noted, the election is not to be held and conducted and returns thereof made, as the law requires in case of township elections, or of the election of township officers. If this had been the requirement, there would have been no room whatever for controversy, and it would seem of significance that

this idea is not expressed.    Had it been intended, why not have so said?    But the language is general, and requires the election to be held and returns thereof made as is "provided by the Township Organization law."    A particular kind of election is not designated as furnishing the guide, but a particular law.    What, then, is "provided by the Township Organization law" on that subject?    It provides for town meetings, in which township officers are to be elected, and to be presided over by a moderator, who, in addition to discharging the duties of presiding officer over the town meeting, "shall have the same power, and be subjected to the same penalties, as other judges of election."    Rev. Stat. 1874, chap. 139, title "Township Organization," secs. 1, 2, 3, 4, 7, 8, 9, 10, art. 6, and secs. 1, 2 and 3, art. 7.    It is also provided by statute that "each town shall constitute an election precinct, but the county board may divide any town into as many election districts as the convenience of the people may require,  *  *  *  and may, from time to time, designate the places at which elections shall be held.    All general and special elections shall be held at the places so designated."    Rev. Stat. 1874, chap. 46, title "Elections," sec. 31.    And sec. 6, art. 6, of the Township Organization law, *supra*, provides that "the supervisor, assessor and collector of the town shall be *ex officio* judges of all elections in their town, except as otherwise provided by law."    There is no reason, of which we have any conception, why this section can be held to be not embraced by the language of the charter quoted *supra*, namely: "provided by the Township Organization law."    It is provided by, for it is a part of, the Township Organization law.    It enacts a general rule, and whether any election is embraced by it, depends upon whether the law under which it is held provides for other or different judges, and no other or different judges being provided for by the railroad charter, those designated must act.

But counsel insist this election must, in ·all respects, be conducted as a town meeting, and, therefore, must have had a moderator only.   The force of this is not perceived.   It might have been very appropriate to have so enacted, but the General Assembly was at liberty to enact as it pleased, and if it chose, as a safeguard to the tax-payers, to interpose an election with the restraints and guarantees thrown around general elections, instead of a town meeting, no one has a right to complain.   The question is not one of propriety, but one of construction,—what was enacted?   The words "town meeting" have a definite and well settled meaning in the Township law, and are uniformly used to describe the annual meetings of the electors of the town for the purpose of electing township officers, and transacting such business as the electors are by law authorized to transact, or special meetings of the electors for such purposes, called pursuant to law.   The statute speaks of elections being held at or in such meetings, but never describes them by the word "election."   Thus, in sec. 1, art. 6:   "The annual town meeting, in the respective towns, for the election of town officers, and the transaction of the business of the town, shall be held," etc.   In sec. 3, art. 6:   "Each town, for the purpose of town meetings, constitutes an election precinct."   Secs. 2 and 5, art. 6, speak of the notices to be given for the holding of town meetings, and of the mode of changing the places for holding town meetings, the latter providing that that question may be included in the notices of such meeting, and "the electors may vote for and against," etc.   Sec. 7, art. 6, provides how special town meetings may be called, and secs. 8 and 9 of the same article provide for notice of special town meetings, and what it shall contain, and sec. 10 provides that the "electors at a special town meeting, when convened, shall have power, among other things, to fill vacancies in the offices of the town."   Sec. 1, art. 7, provides that "at the annual town meeting in each town there shall be elected, by

ballot," certain town officers.   Sec. 2 of the same article provides how regular and special town meetings may be called to order, and a moderator thereof elected, and this officer is uniformly styled and spoken of as "moderator of the town meeting."   In sec. 5 of the same article the town clerk is made clerk of the town meeting, and in sec. 10 of the same article, the canvass of the votes being made, "the result shall be publicly read by the clerk to the meeting."

On the other hand, we know of no instance in which the word "election" alone, unaccompanied by any qualifying words pointing out its connection with a town meeting, is used to describe what is in reality a town meeting.   The General Assembly must be presumed, in the enactment of the charter of the Chicago and Iowa Railroad Company, to have been mindful of this use of these terms, and to have employed language in the same sense; yet the words "town meeting" do not occur in that charter.   The petition to be presented to the town clerk is not for a "town meeting," but for "an election to be held," etc.   The notices to be posted are not, as in the cases of special town meetings, to be of "special town meetings," but of "an election to be held by the legal voters," and whenever mention is made of taking the vote of the electors, it is called an "election."   It can not be said the words "town meeting," as used in the Township law, and the word "election," are convertible terms. There may, it is true, at a town meeting be nothing but an election, but there may be more.   The theory of such a meeting is, that the corporate body of the town is present for the purpose of transacting, and competent to transact, all the corporate business of the town not specially delegated to certain individual officers, and, but for the statute requiring officers to be selected by ballot, this would manifestly all be done in open meeting, by resolution, or whatever other method would be agreed upon to ascertain the will of the majority.  ·

Again, by section 8, art. 7, of the Township Organization law, *supra,* "no registration of voters shall be required for the purposes of a town meeting." The meeting is held with open doors. All the electors so desiring are present, and each elector has an opportunity for detecting and exposing and prohibiting the participation of those not lawfully entitled to take part in the proceedings. But in case of general elections this is not so. The judges of those elections are authorized to allow not more than two legal voters, as challengers, of each party, in the room where the election is held. The elector, as a rule, casts his ballot and goes away. In a great measure the responsibility of detecting imposition and fraud is left with the judges of elections; but to enable them to protect the purity of the ballot-box, certain restrictions are imposed upon those seeking to exercise the elective franchise, among which is that of registration. And a circumstance, as we think strongly confirmatory of the view that it was intended an election, and not a town meeting, was to be held under the charter, is, that the charter, in its 13th section, expressly provides "the qualification of the electors at said election shall be determined by the registration next preceding said election." It is impossible the Registry law can be complied with at a town meeting. It requires (sec. 7, chap. 46, p. 470, Rev. Stat. 1874,) one of the registry lists to be delivered to the judges or inspectors, and one to be filed in the office of the town clerk, etc., and then provides that "it shall be the duty of said judges or inspectors so receiving such list carefully to preserve the said list for their use on election day, and to designate two of their number, at the opening of the polls, to check the name of every voter voting in such district whose name is on the register." And section 9 of the same act makes provision for the depositing and keeping of these lists after the election. The only difference between this and any other election, as respects the registry, is, obviously, here the judges use the old registry lists, while in the

others they use lists specially prepared for the occasion. In all other respects the duties of the officers are the same.

It is said this provision in section 13 was unnecessary, and therefore meaningless, because it was already provided in the Township law that there need be no registry. Its necessity was a question for the General Assembly. It is very clear in its language, and by no fair rule of construction can it be held to be identical in meaning with the Township law on that subject. The distinction is between using an old registry list and using none at all. The Township law requires no list; the charter requires a list, but it is the old one.

We think the court below ruled correctly. Its decree will, therefore, be affirmed.

*Decree affirmed.*