## JOHN HARMON ET AL.

## AUDITOR OF PUBLIC ACCOUNTS ET AL.

*Municipal Corporations—Railroad Bonds—Bill to Enjoin Collection and Payment of Taxes—Former Adjudication—Parties—Estoppel—Compromise.*

Upon a bill filed by certain taxpayers on behalf of themselves and all other taxpayers of the town in which they reside, to enjoin the payment of certain railroad bonds and the collection of taxes therefor, it is *held:* That, although the election at which the issue of the bonds was authorized may be admitted to have been invalid, the complainants are estopped by the decree of the Supreme Court in a former action brought by certain other taxpayers of the town, to enjoin the issue of the bonds in question; that the complainants in the former action represented all other taxpayers residing, or who might thereafter reside, in the town; that the question whether the election at which the issue of the bonds was authorized, was legally conducted, is *res adjudicata*, it having been sufficiently presented by the pleadings and evidence in the former action, although not passed upon by the Supreme Court; that the objection that the bonds exceeded five per cent. of the taxable property of the town can not now be raised. even if the donation was within the Constitution of 1870; and that, it *seems*, a certain compromise as to the issue of the bonds would not of itself estop the complainants.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of Ogle County. the Hon. J. V. EUSTACE, Judge, presiding.

Statement by LACEY, J.   This was a bill in equity, filed to October term, 1882, by the appellants against the appellees, seeking to enjoin the County Treasurer of Ogle County from paying over to the Auditor of Public Accounts so much of the tax as has been collected to pay certain town bonds of the Town of Mt. Morris, in said county, and also the County Collector from collecting the remainder of the tax under the law of 1869, to pay said bonds, there having been already collected and in the hands of the County Treasurer the sum of $4,301.37 of the tax levied for that purpose.

The appellants are taxpayers of the said Town of Mount Morris, in Ogle County, residing therein, to the amount of about $200 each annually. It appears from the bill, answers and evidence in the case that the Town of Mount Morris was duly organized under township organization law; that John W. Hitt, Supervisor, and H. H. Clevidence, Town Clerk, issued certain bonds of the said town to the Chicago and Iowa Railroad Company, bearing date May 3, 1875, and due May 1, 1885, of two series; the first for $500 each, numbered from one to fifty, inclusive, and the second for $1,000 each, numbered from fifty-one to seventy-five, inclusive; making in all seventy-five bonds, aggregating the sum of $50,000, each with coupons attached drawing ten per cent. interest, the interest payable annually. The taxes were sought to be collected under the Act of April, 1869. The vote of the legally qualified electors of the town, under which the original authority is claimed to issue the bonds, was taken under Secs. 11, 12 and 13 of the charter to incorporate the Chicago and Iowa Railroad Company, Private Laws 1869, Vol. 2, page 163, which is set out in full, on the 30th day of June, 1870, at a town meeting, under proper notice. The bonds were voted as a donation, and the sum of $75,000 was voted instead of $50,000, as was afterward issued. The election was held as a special town meeting, presided over by a moderator, and without the judges and clerks required at general elections. The bonds were duly registered in the Auditor's office, at Springfield, and the taxes were duly levied as stated in the bill. It appears that after the vote to issue the $75,000 in hand to the company was taken, and after the railroad was very nearly completed and the bonds were about to be issued, according to the vote, to wit, on the 11th day of November, 1871, one Daniel J. Pinckney and five others, all residents and owners of real and personal property located in said town, and which property was liable in common with the other taxable property in the said town to taxation for State, county and township purposes, filed their bill in equity in the Circuit Court of Ogle County against the said Railroad Company, the Town of Mount Morris, Charles Newcomer, its Supervisor, and Henry H. Clevi-

dence, its Clerk, praying that the issuing of the said bonds be perpetually enjoined, and that the assessment and collection of any taxes upon the taxable property in the said Town of Mount Morris to pay said bonds, or any part thereof, be perpetually restrained. The bill sets up in proper form and makes these points against the validity of the said proposed bonds: That the ballots cast were illegal and void, in that the voters voting had no power to determine whether the Town should make any donation, or to bind or obligate the Town to make any donation or to issue bonds; and that in truth and fact there were no legal and valid votes or ballots cast at said election.

The bill purports to ask relief in favor of the complainants and all other tax-payers of the Town of Mount Morris.

It sets up particularly the manner of posting the notice, the provisions of the sections of the charter under which the vote was purported to be taken, and particularly its requirement in regard to calling and holding an election. Among other requirements is this: "And it [by the charter] was further expressly provided that such election should be held and conducted and returns thereof made as was provided by the township organization law in towns organized under said law." It further showed that Frederick B. Brayton, the Town Clerk, received the necessary petition of the requisite number of tax-payers on June 9, 1870, and that the Town Clerk posted the notices in proper form, of an election to be holden on June 30, 1870, for donation for $75,000 to said railroad company. It further showed that the Town Clerk called the meeting to order on June 30, 1870, at the place and time mentioned in the notice, between 9 and 10 o'clock, A. M., where the voters had assembled, and that M. T. Roher was chosen moderator of the meeting, and during the continuance of the meeting acted as such and was sworn; that the polls were kept open till six o'clock in the evening, and upon canvass there was 57 majority for the donation. It (the bill) objects that the notice posted for the election was void, because it failed to fully state the object of the election and the rate of interest the proposed bonds were to bear, etc. This was about the full scope of the

Pinckney bill. To this bill the railroad company answered separately. The town and the Supervisor joined in an answer. Both answers admitted in affirmative terms the manner of holding the election, and the manner was proved on the hearing by a copy of the record. Upon a hearing the Circuit Court perpetually enjoined the town and its officers from issuing and the railroad and its agents from receiving the bonds in question. The defendants took the case by appeal to the Supreme Court, where, on a second hearing on the merits, the decree of the Circuit Court was reversed and the bill dismissed. The judge, in writing the opinion of the Supreme Court, states that the principal points relied on by the appellant to prevent the town from issuing bonds are: *First.* The Constitution of 1870 prohibits a donation by a town to a railroad corporation. *Second.* The vote was void, because the notice of election and the petition were defective.

The Supreme Court held both the points against the appellees in that case. In the meantime H. H. Clevidence, Supervisor, had been succeeded by John W. Hitt. Upon petition of tax-payers, after the decision in the Supreme Court against the town, he called a special town meeting and laid the proposition of the railroad company before them to take $50,000 instead of $75,000, which was a rebatement of all interest, and $25,000 of the principal sum voted, and the tax-payers voted *unanimously* to accept it. At the annual town meeting, occurring within eighteen months thereafter, on April 6, 1875, the action of the special town meeting was approved and ratified, with *thanks* to the Supervisor who brought about the settlement. Under these circumstances the bonds in question were issued and delivered to the railroad company. One of the defendants, The German Fire Insurance Company, relying on the judicial sanction of the bonds and of the compromise, purchased of them to the amount of $26,500. Chester H. Williams, under the same circumstances, purchased two of the same bonds, and he is one of the defendants, and Benjamin F. Hedrick, another of the defendants, purchased two other of the bonds of $1,000 each.

The taxable property as assessed by the Town Assessor was

$1,147,640 for the year 1874, and as equalized by the Board of Supervisors of Ogle County it was $997,441, and by the State Board of Equalization $692,057, and for the year 1875 it was assessed by the Town Assessor $1,233,822, and by the County Board of Equalization $1,009,822, and by State Board of Equalization $691,884.

The court below, upon the hearing, dismissed the bill, and from that decree this appeal is taken. The town continued to pay the annual interest on these bonds so issued till the commencement of this suit.

Messrs. COOK & LAWRENCE and W. & W. D. BARGE, for appellants.

None of the complainants in this case were parties to the Pinckney suit (74 Ill. 277). The relief sought in that case was to enjoin the town and its officers from issuing bonds to the Chicago and Iowa Railroad Company, in the sum of $75,000. The court did not decide that there was any valid election holden, nor that these bonds were valid and binding upon the town. They simply say, "we can see no ground upon which the bill in this case can be sustained."

Neither the parties nor the subject-matter are, or is, the same in these cases. The complainants in this case, being neither complainants nor defendants in the former case, were not, therefore, parties to the record in that case, and not being parties of record thereto they could not introduce testimony nor cross-examine witnesses, nor take exceptions, nor pray an appeal from the judgment of that court. True they are owners of real property and tax-payers in that town, but they have not acquired title to their realty through or from any of the complainants in the former suit, and do not claim under them, and they are therefore not privies with them, and are, therefore, not to be concluded by that judgment, because they could not avail themselves of the same means of protecting themselves and their property, which are open to them by reason of the present suit. The town is not the representative of the tax-payers or in privity with them. It has no property subject to taxation, and whether a tax levied

upon citizens shall be collected is a matter for the citizen to determine. City of Waverly v. Auditor of Public Accounts, 100 Ill. 354.

The subject-matter in the case of Pinckney v. C. & I. R. R. Co., was the donation of $75,000 of the bonds of the town of Mt. Morris, and the purpose of the suit was to restrain the issuing of the bonds. The subject-matter of this suit was $50,000 of the bonds of the town issued five years after, and the purpose of the suit is to restrain the collecting of taxes from complainants to pay said bonds. Cromwell v. County of Sac, 94 U. S. 351; Scates v. King, 110 Ill. 456; Davis v. Brown, 94 U. S. 428; Cooper v. Corbin, 105 Ill. 228; Town of Lyons v. Cooledge, 89 Ill. 529, 536; Gaar, Scott & Co. v. Hurd, 92 Ill. 315, 332; Yeates v. Briggs, 95 Ill. 79, 87.

In order to constitute an estoppel the same point must be put in issue upon the record and directly found, whenever a fact has been so put in issue and determined that the record is regarded as conclusive of that fact whenever it is again drawn in question between the same parties or their privies. But it results from the established rule of pleading that this rule must be strictly confined to what is put directly in issue, and can not be extended to collateral facts, or facts to be deduced by inference from the facts found. - Eastman v. Cooper, 26 Am. Dec. 604 ; Keater v. Hock, 16 Iowa, 24 ; King v. Parker, 15 N. H. 1 ; Burt v. Sternberg, 4 Cow. 559 ; Thompson v. Clay, 16 Am. Dec. 110 ; Balsain v. Cloutier, 22 Am. Dec. 180 ; Knox v. Exeter, 42 N. Y. (S. Ct.) 10 ; Lawrence v. Hunt, 10 Wend. 80 ; S. C. Am. Dec. 539 ; Quackenbush v. Ela, 5 Barb. 473.

Mr. M. D. HATHAWAY, for appellees.

The decree in the Pinckney case established the validity of the original donation, and that decree binds the complainants in this case.

The judgment of the court of competent jurisdiction is not only conclusive on all questions actually and formally litigated, but as to all questions within the issue, whether formally litigated or not. Bellinger v. Craine, 31 Barb. 537; Freeman

on Judgments, 3d Ed., Sec. 275; Armstrong v. St. Louis, 69 Mo. 409; Long v. Webb, 24 Minn. 380.

Even if we assume that the Pinckney bill attacked the election solely on the ground that the notice of election was insufficient, the decree is still *res adjudicata.* A complainant can not set up some of his grounds for relief in one bill, and when defeated file another and set up other grounds of relief. In such case he is concluded by the former decree. Ruegger v. I. & St. L. R. R. Co., 103 Ill. 449 ; Hamilton v. Quimby, 46 Ill. 90 ; Rogers v. Higgins, 57 Ill. 244 ; Kelly v. Donlin, 70 Ill. 378 ; Garrick v. Chamberlain, 97 Ill. 620 ; Briscoe v. Lloyd, 64 Ill. 33 ; Gray v. Gillilan, 15 Ill. 453 ; Guinard v. Heysinger, 15 Ill. 288 ; Wells v. McClenning, 23 Ill. 409 ; Locke v. Davison, 111 Ill. 19 ; Att'y-Gen. v. C. & E. R. R. Co., 112 Ill. 520.

The authorities are uniform that *res adjudicata* covers whatever might have been litigated in the former suit. Aurora City v. West, 7 Wall. 82; Fischli v. Fischli, 1 Blatchf. 360; Lindsley v. Thompson, 1 Tenn. Ch. 272; Dewey v. Peck, 33 Iowa, 242; Smith v. Town of Ontario, 18 Blatchf. 454; McGregor v. McGregor, 21 Iowa, 441; Petersine v. Thomas, 28 Ohio St. 596; Knight v. Atkinson, 2 Tenn. Ch. 384; Bates v. Spooner, 45 Ind. 489 ; Beloit v. Morgan, 7 Wall. 619.

As the Pinckney decree established the validity of the original donation, the bonds now in controversy are valid.

As the original bonds must be held valid under the doctrine of *res adjudicata,* the bonds issued in 1875 and now in controversy must be held valid. A municipality undoubtedly has power to issue bonds to be substituted for those which it can legally be compelled to issue. Rogan v. Watertown, 30 Wis. 259 ; City of Troy v. R. R. Co., 11 Kan. 519 ; McKee v. Vernon Co., 3 Dillon, 210 ; New Albany v. Burke, 11 Wall. 96; State v. Holladay, 72 Mo. 499; Chandler v. Attica, 18 Fed. Rep. 299 ; Steines v. Franklin Co., 48 Mo. 167 ; Burr v. Carbondale, 76 Ill. 455, 474.

This court can not declare these bonds void as against these defendants. They bought the bonds in reliance on the Pinckney decree, and no State court can impair the obligation of

their contract.   Gelpeke v. Dubuque, 1 Wall. 175, 206 ; Trust
Co. v. Debolt, 16 How. 432 ; Green Co. v. Conness, 109 U. S.
104 ; D uglas v. Pike Co., 101 U. S. 677 ; County of Ralls
v. Douglas, 105 U. S. 728 ; Olcott v. Supervisors, 16 Wall.
678 ; Havemeyer v. Iowa City, 3 Wall. 294.

LACEY, J.   Two points are presented in this case for our
consideration, as follows :   Was the election held June 30,
1870, void, or was it invalid by the reason of the election
having been held by a moderator, and not by judges and clerks
the same as regular elections ?   If such election is admitted
to be illegal, is there an estoppel against appellants, tax-payers
who are complainants herein, by reason of the Pinckney suit
and final decree of the Supreme Court deciding in favor of
the validity of the bonds and the subsequent compromise with
the railroad company and the issuing of the $50,000 in bonds
in lieu of the $75,000 originally voted ?   It must be conceded
that the original election was invalid, not being held according
to the charter of the railroad company which required the
elections authorizing the subscriptions or donations to the
railroad company to be carried on the same as in general elec-
tions, by judges and clerks, instead of being conducted by a
moderator, as in the present instance.   C. & I. R. R. Co. et
al v. Mallory, 101 Ill.  583.

The question remaining is, was there an estoppel ?   This
brings us to consider first whether the parties to the two dif-
ferent suits were the same in the eyes of the law and whether
the subject-matter of the first suit was legally identical with
what is attempted to be litigated here.   It will be observed
that the town of Mt. Morris and the Chicago and Iowa Rail-
road Company and the Supervisor and Town Clerk were party
respondents in the Pinckney case, *supra*.   That if the town
and its officers had seen proper, it could have joined the com-
plainants in trying to defeat the issuing of the bonds, but it
remained one of the defendants, probably choosing to occupy
a neutral position; and the railroad company defended against
the attacking tax-payers of the town who were really repre-
senting the other tax-payers.   The railroad company was suc-

Harmon v. Auditor Public Accounts.

cessful and legally established their right in that suit to have
the bonds issued. They were issued, by the company rebating
all of the $75,000 voted, except $50,000. After the railroad
had sold the bonds to innocent purchasers who relied on the
fact that the highest legal tribunal in the State had declared
them valid, can another set of tax-payers be allowed to come
forward and relitigate the same matter, find new objections
and defeat the payment of the bonds? If the appellants may
do this every other tax-payer in the town may do the same
thing and there are several hundred of them. There would
be no end to litigation if such were the law. We think the
complainants in the first suit not only represented themselves
in the matter, but all the other tax-payers that then resided
in the town and all those who may come after them. All the
tax-payers had a common interest with the first complainants
in the question of the validity of the bonds. If the suit was
successful all were alike benefited in proportion to the taxable
property they owned, and it was impracticable to make all the
tax-payers parties complainant. In such case a portion of the
tax-payers interested in common with the others may repre-
sent the interest of all, more especially in this class of cases
where tax-payers are allowed to sue, and where they are not
compelled to await the action of the officers representing the
town. It would be contrary to a sound public policy to allow
each tax-payer a right to an independent and successive suit.

We find that this question has been passed upon by courts
of the highest authority and they have held that the tax-payer
who brings this kind of a suit, represents all other tax-payers,
and that a judgment against them binds all others in the same
common interest. That also a suit by the town or other
municipal body binds the tax-payers and a judgment against
the town can be pleaded in bar against any tax-payer who
may attempt to revive the same litigation in his own name.
" A petitioner, a citizen of a county, is bound by a judg-
ment against the county in a court having jurisdiction, or
against the Board of Supervisors, they being the legal repre-
sentatives of the county." Clark v. Wolf, 29 Iowa, 197. A
case much in point and similar in facts to the case at bar is the

State ex rel. v. C. & L. N. G. Railroad Company, 13 S. C. 290, and also the State ex rel. v. Wilson, 74 Mo. 232. See, also, Freeman on Judgments, Ed. 1881, Sec. 178; Scotland Co. v. Hill, 112 U. S. 183. These cases fully sustain the doctrine.

The next and remaining question is, was the point now made in the suit, that the election of June 30, 1870, at which the donation of $75,000 was voted by the legal voters of the town invalid because the election was presided over by a moderator and not judges and clerks adjudicated in the Pinckney suit; or ought it to have been so adjudicated, so as to estop appellants from relitigating the matter in this suit?

We think clearly it was so settled and is a matter *res adjudicata*. In the bill in that case all the facts in regard to the petition for calling the election, the manner of conducting the election by a moderator, declaration of and counting the vote, and every other step, was set forth particularly.

The answers admitted this and the proof also showed it. The bill also made the point that the election and vote were void.

The identical question raised here was sufficiently presented by the pleadings and evidence. If the point had been made in the brief or argument to the Circuit or Supreme Court without any amendment to the bill the questions must have been passed upon. No other allegation need have been made. All the allegations and pleadings were before the eyes and face of attorneys, and all they need do was to point out the objection to the court.

Instead of that they remained silent apparently not aware that such a point might be made and so failed to urge it before the court, although the Supreme Court had decided the question before.

The Supreme Court did not pass upon the question at all but only upon the question as to whether the Constitution cut out *donations*, though not subscriptions in all cases, to railroad companies by municipal corporations after July 21, 1870, the day the new Constitution went into effect, and the sufficiency of the petition to call the election as to interest to be borne by the bonds.

The court held that the saving clause in the Constitution applied to donations as well as to subscriptions, and that the petition of twenty voters to have an election called was sufficient, and reversed the decree and dismissed the bill.

In Preble v. Board Supervisors, 8 Biss. 358, it was held that a "complainant can not divide his cause of action, setting up one ground of illegality in that suit, and if he fails in that, bring a second suit for like purpose, setting up another ground of illegality," provided the facts were known at the time of the bringing of the first suit. The same was held in Rodgers v. Higgins, 57 Ill. 244; Kelly v. Donlin, 70 Ill. 378; Rugger v. I. & St. L. R. R. Co., 103 Ill. 449; Hamilton v. Quimby, 46 Ill. 90; Garrick v. Chamberlain, 97 Ill. 620; Briscoe v. Lloyd, 64 Ill. 33.

There can be no pretense that the complainants in the Pinckney bill did not fully know of the manner in which the election was held, for they particularly set it out in their bill, and ignorance of law will not avail them.

As to the point raised, that the question that the town under the Constitution could not issue the bonds, because it would have been in excess of five per cent. of the assessed value of the taxable property in the town, we say that upon the determination by the Supreme Court in the Pinckney case, that the donation was valid, the bonds became issuable under the saving clause of the Constitution, which is as follows: "This section shall not be construed to prevent any county, city, township, school district or other municipal corporation from issuing their bonds in compliance with any vote of the people which may have been had prior to the adoption of this Constitution in pursuance of any law providing therefor."

When it was once determined that this donation was a valid obligation, it became a vested right to have it paid as against any new law that should be passed, and the new Constitution was not aimed to affect debts existing at its adoption.

In this view it made no difference whether the point was raised as long as complainants in that case failed to raise any point to affect the validity of the vote, as it must inevitably have been overruled if made. And for the same reason it is

of no value now.    It should also have been raised in the Pinck-ney case, as Pinckney and his attorneys must have had knowl-edge of the existence of the Constitution of 1870, and the assessed value of the taxable property of the town.    The Supreme Court, in Ramsey v. Hoger, 76 Ill. 432, did not hold that portion of the act of 1869 in relation to registration and collection of the bonds from the towns void, only the excess-ive tax levied by virtue of it and the law allowing such levy.

We are inclined to hold that the compromise between the railroad company and the town and the issuance of a less num-ber of bonds than voted, would not be in itself an estoppel to the prosecution of this suit.    If the town had no authority to issue the bonds this compromise could not confer it.    But as the bonds are to be held valid such fact is not needed as the former adjudication settles the matter without it.    The bonds were issued in accordance with the original vote, only five years later, and this delay was caused wrongfully by the town, or the suit of the tax-payers, which is chargeable to these complainants, and the fault should not be charged to the bond-holders.    The railroad company, without doubt, would have taken them sooner if they could have gotten them.

We have noticed every objection of importance urged against the correctness of the decree of the Circuit Court, and finding no error affirm it.

*Decree affirmed.*