## PANA *v.* BOWLER.

1. The act of the General Assembly of Illinois approved Feb. 24, 1869, amendatory of an act entitled "An Act to incorporate the Illinois Southeastern Railway Company," approved Feb. 25, 1867, removed the limitation of $30,000 imposed upon the amount which, by the latter act, "any town in any county under township organization is authorized and empowered to donate to said company."

2. The court reaffirms the ruling in *Harter* v. *Kernochan*, 103 U. S. 562, that the duly signed and countersigned township bonds, payable to the company or bearer, which recite that they are duly issued in compliance with the vote of the legal voters of the township, cast at an election held by virtue of the above-mentioned acts of Feb. 25, 1867, and Feb. 24, 1869, are valid in the hands of a *bona fide* holder.

3. An irregularity in conducting the election will not defeat a recovery on the bonds, or on the coupons thereto attached, nor overcome the presumption that the plaintiff, in the usual course of business, became at their date the holder of them for value.

4. A decree *in personam*, rendered by a court of the State of Illinois, declaring the bonds to be void, does not bind a non-resident holder of them who was not named as a party to the suit and did not appear therein, and who had no notice of the pendency thereof other than by a publication addressed to the "unknown holders and owners of bonds and coupons issued by the town of Pana."

5. Coupons after their maturity bear interest at the rate prescribed by the law of the place where they are payable.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

This was an action of assumpsit brought by James H. Bowler and Isaac H. Merrill against the town of Pana, Illinois, upon coupons cut from certain bonds issued by the town, dated June 23, 1873. The defendant pleaded the general issue, and the parties having waived a jury, submitted the case to the court upon the facts as well as the law. The court found the issues of fact for the plaintiffs, and rendered judgment in their favor for $7,272.02. This writ of error is brought by the defendant to review that judgment.

The parties made an agreed statement, and the court a special finding, of facts. From these and the pleadings in the case the following facts appear: —

On Feb. 25, 1867, an act was passed by the Illinois legislature "to incorporate the Illinois Southeastern Railway Company." Sects. 9 and 10 of this act declared as follows: —

"SECT. 9. Any town, in any county under township organization, is hereby authorized and empowered to donate to said company any amount, not to exceed thirty thousand dollars: *Provided*, that no such donation by any such town to said company shall be made, unless the question of making such donation shall have been first submitted to the legal voters of such town at an election hereafter to be provided for: *And provided further*, that no donation so made, nor any part thereof, nor any interest accruing thereon, or upon any part thereof, shall be paid, or become due or payable to said company, until said company, or its assigns or employés, shall have completed their said railroad, or some certain part of said road, or its branch, as may have been agreed upon by the contracting parties.

"SECT. 10. No such election for the purpose of submitting the question of making a donation by any such town, authorized by section 9 of this act to donate to this company, shall be held until the directors of said company shall have filed a proposition to the inhabitants of said town with the county clerk of the county wherein such town is situate, and a copy of the same with the clerk of said town, and, if there be a newspaper published in said county, said proposition shall be published in full in the same, whereupon it shall be the duty of the clerk of such town to post up printed or written notices of the time and place of holding such

election in at least ten public places in such town, together with a copy of such proposition, at least twenty days before the day for holding such election; at which election the legal voters of such township shall vote for or against such proposition; and if a majority of all the votes cast be for such proposition, the trustees of such town shall so certify the same to the clerk of the county court of the county wherein the town is situated, and such county clerk shall, upon application of the company, after the donation so voted by any such town shall have become due and payable, under the terms and conditions of the proposition under which said election was rendered, compute and assess upon all the taxable property in said town an amount sufficient to pay such donation, or any part or instalment of the same so then being due and payable; which taxes so assessed shall be collected as other taxes; and the taxes so collected shall be paid to the treasurer of said company. And the election herein provided for shall be held, canvassed, and returned as other regular town elections."

Afterwards, on Feb. 24, 1869, another act was passed to amend the act to incorporate the Illinois Southeastern Railway Company, sect. 10 of which was as follows: —

" SECT. 10. That any village, city, county, or township organized under the township organization law, or any other law of this State, along or near the route of said railway or its branches, or that are in anywise interested therein, may, in their corporate capacity, subscribe to the stock of said company, or render donations to said company to aid in constructing and equipping said railway: *Provided*, that no such subscriptions or donations shall be made until the same shall be voted for, as hereinafter provided. That whenever twenty legal voters of any such city, village, county, or township shall present to the clerk thereof a written application requesting that an election shall be held to determine whether such village, city, county, or township shall subscribe to the capital stock of said company or make a donation thereto, to aid in building or equipping said railway, stating the amount, and whether to be subscribed or donated, and the rate of interest and times of payment of the bonds to be issued in payment thereof, such clerk shall receive and file such application, and shall immediately proceed to post written or printed notices, calling an election to be held by the legal voters of such village, city, county, or township, which notice shall be posted in ten of the most public places of

such village, city, county, or township. for thirty days preceding an election ; and said notices shall state fully the object of such election, and such election shall be held and conducted, and returns thereof made as in general elections provided by law in this State, and as provided by the charters of any such village or city : *Provided*, that at any election held under the provisions of this act it shall not be necessary to cause a registration of the voters of such villages, cities, counties, or townships ; and if a majority of the votes cast at such election shall be in favor of such subscription or donation, then the corporate authorities of such village, city, county, or township, organized under the township organization laws of this State, the supervisors of such township shall subscribe to the capital stock of said company or donate thereto, as shall have been determined at such election, the amount so voted at such election, and shall issue the bonds with interest coupons attached, . . . said bonds to be signed, . . . in case of a township, by the supervisor thereof, and . . . to be countersigned by the clerk of said . . . township," &c.

Afterwards the Springfield and Illinois Southeastern Railway Company, to which the bonds in question in this case were issued, was created by the consolidation of the Pana, Springfield, and Northwestern Railroad Company and the Illinois Southeastern Railway Company. The consolidation was authorized by the charters of the two companies, and the new company succeeded to all the rights, franchises, and powers of the constituent companies. *Harter* v. *Kernochan*, 103 U. S. 562. In pursuance of sect. 10 of the said act of Feb. 24, 1869, a petition was presented to the town clerk of Pana Township to order an election to be held on April 30, 1870, to decide whether said township should donate to the Springfield and Illinois Southeastern Railway Company the sum of $100,000 in bonds to fall due in twenty years, or at the option of the township in five years from this date, with interest at the rate of eight per cent per annum, payable semi-annually. On April 30, 1870, an election was held in said township in pursuance of the petition, and a notice thereof given according to law. The meeting at which the election was held was called to order by the town clerk, and one J. W. Stark was on motion chosen moderator, and was sworn in by the town clerk and presided over the election. At the election

thus held four hundred and thirty-eight votes were cast for and twenty-four against said donation. In the spring, summer, and fall of the year 1873, the supervisor and town clerk of said township, in pursuance of said election and without any other authority of law than said election and the charters and amendments above referred to, issued to the Springfield and Illinois Southeastern Railway Company one hundred bonds of the township of Pana, of $1,000 each, payable and bearing interest according to the rate aforesaid. All the bonds were of like tenor and effect except as to their number. The following is a copy of one of them: —

" UNITED STATES OF AMERICA.

" STATE OF ILLINOIS, COUNTY OF CHRISTIAN.

"No. 6.]              Pana Township.              [$1,000.

"Eight per cent. railroad bond. Registered by auditor of public accounts. Principal and interest collected and paid by the treasurer of State of Illinois.

" Know all men by these presents that the township of Pana, in the county of Christian, and State of Illinois, acknowledges itself indebted to the Springfield and Illinois Southeastern Railway Company, or bearer, in the sum of one thousand dollars, with interest from the date hereof, at the rate of eight per cent. per annum, payable semi-annually on the first days of January and July of each year, at the agency of the State treasurer of the State of Illinois, in New York City, on the presentation and surrender of the respective interest coupons hereto attached. The principal of this bond shall be due and payable after five years and within twenty years of the date hereof, at the option of said township, at said agency in the city of New York.

" This bond is one of a series amounting to one hundred thousand dollars, issued by said township in compliance with the vote of the legal voters thereof at an election held on the thirtieth day of April, A. D. 1870, under and by virtue of the authority conferred by an act of the General Assembly of the State of Illinois, entitled 'An Act to incorporate the Illinois Southeastern Railway Company,' approved February 25th, 1867, and an act amendatory thereof, approved February 24th, 1869, and in accordance with the provisions of an act of said General Assembly, entitled 'An Act to fund and provide for paying the railroad debts of counties,

cities, townships, and towns,' in force April 16th, 1869. And for the payment of said sum of money and accruing interest thereon, in the manner aforesaid, the faith of the said township of Pana is hereby irrevocably pledged, as is also its property, revenue, and resources.

"In testimony whereof the said township of Pana has caused these presents to be signed by its supervisor and countersigned by its clerk, this twenty-eighth day of June, A. D. 1873.

"GROVE P. LAWRENCE, *Supervisor.*

"EDWIN SANDERS, *Clerk.*"

At the time the bonds and coupons were issued Grove P. Lawrence was the supervisor of said township of Pana, and Edwin Sanders was its clerk, and their signatures to the bonds and coupons are genuine.

The coupons attached to said bonds were all of the same tenor and effect, except in respect of their numbers. The following is a copy of the coupon attached to the above recited bond: —

"$40. The township of Pana, Christian County, Illinois, will pay the bearer forty dollars on the 1st of January, 1882, at the agency of her State treasurer in the city of New York, it being six month's interest on bond No. 6.

"GROVE P. LAWRENCE,

"*Supervisor of said Township.*"

On the back of every bond was the following indorsement: —

"AUDITOR'S OFFICE, ILLINOIS,

"SPRINGFIELD, June 28th, 1873.

"I, Charles E. Lippincott, auditor of public accounts of the State of Illinois, do hereby certify that the within bond has been registered in this office this day, pursuant to the provisions of an act entitled 'An Act to fund and provide for paying the railroad debts of counties, townships, cities, and towns,' in force April 16, 1869.

"In testimony whereof I have hereunto subscribed my name and affixed the seal of my office the day and year aforesaid.

[SEAL.]          "C. E. LIPPINCOTT, *Auditor, P. A.*"

The act referred to in this certificate provided that certain taxes, therein specified, should be applied to the payment of the principal and interest of bonds registered in the office of

the auditor of public accounts, and that no bonds should be so registered until the railroad, in aid of which the bonds had been issued, should have been completed near to or in the township issuing the bonds, and unless the subscription or donation creating the debt to pay which the bonds were issued had been first submitted to an election of the legal voters of said township under the provision of the laws of the State, and a majority of the legal voters living in such township had been in favor of such aid, subscription, or donation. And it was made the duty of the supervisor of the township, upon the completion of the railroad near to or through the township by which the bonds were issued, to certify under oath to the State auditor that all the preliminary conditions required by the act to be done to authorize the registration of the bonds and to entitle them to the benefits of the act had been complied with. See Hurd's Revised Statutes, 1880, p. 807, sect. 17.

The record in this case showed that the certificate above mentioned in reference to the issue of the bonds in question had been made by Grove P. Lawrence, the supervisor of Pana Township, and transmitted by him to the auditor of public accounts.

The interest on said issue of $100,000 of bonds was levied and collected and paid for three years by the State treasurer as provided by law.

It further appeared that in the year 1876 the town of Pana and three taxpayers filed, in behalf of themselves and all other taxpayers of the town, a bill in the Circuit Court of Christian County against the auditor of public accounts of the State of Illinois, the treasurer of the State of Illinois, the treasurer and the clerk of Christian County, Illinois, the town collector of the town of Pana, and H. N. Schuyler, William E. Hayward, John Vedder, and William Houston, and "the unknown holders and owners of said bonds and coupons issued by the town of Pana," as defendants, in which the complainants prayed that said public officers might be perpetually enjoined from levying a tax with which to pay said bonds and coupons, and that said bonds might be declared void, and that said holders and owners of said bonds might be perpetually enjoined from selling or negotiating or suing upon said bonds or the coupons attached

to them, or pretending or insisting in any court of law or equity or elsewhere, in any manner whatsoever, that said town was liable upon said bonds or coupons.

The parties made defendant by name were either served with process, or they voluntarily appeared in the case. It was assumed that "the unknown holders and owners of said bonds and coupons issued by the town of Pana" were brought in by publication of a notice to them under that designation in a newspaper, according to the laws of the State of Illinois. The Circuit Court of Christian County dismissed the bill, but the appellate court, upon appeal, reversed its decree and directed it to grant the prayer of the bill; and the decree of the appellate court was affirmed by the Supreme Court, to which the case was carried by the defendants. Afterwards, at its November Term, 1879, to wit, on December 17, the Circuit Court, upon receiving the mandate of the appellate court and of the Supreme Court, entered a decree in favor of the complainants, in accordance with the prayer of the bill.

The coupons offered in evidence being those upon which the suit was brought, were, at the time of the trial and before the commencement of the suit, held and owned by the plaintiffs, who were citizens of the State of Maine.

Such were the material facts of the case. The town of Pana, by its assignments of error, insists : —

1. That there was no authority in the charter of the Springfield and Illinois Southeastern Railway Company to hold an election and issue bonds to the amount of $100,000. .

2. That the election held on April 30, 1870, was illegal and void, because it was presided over by a moderator and not by the supervisor, assessor, and collector, as required of general elections by the law of the State, and, therefore, conferred no authority upon the supervisor and town clerk to issue said bonds and coupons.

3. That it was incumbent on the plaintiffs below, the bonds having been illegally issued, to prove that they were *bona fide* holders of the coupons for value, which they failed to do.

4. That no judgment could be rendered for the plaintiffs on said coupons after they and the bonds to which they belonged

had been declared void by the decree of the Circuit Court of Christian County.

5. That in any event the judgment was too large by $572.22.

*Mr. William J. Henry* for the plaintiff in error.
*Mr. George A. Sanders* for the defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court, and, after making the foregoing statement, proceeded as follows: —

The people of the township of Pana voted almost unanimously for the donation to pay which the bonds in this case were issued. There is no pretence of any fraud in their issue. It is not disputed that the railroad company complied on its part with all the conditions upon which they were to be issued, or that the township has received all for which it bargained in consideration of the issue of them. They were registered in the office of the auditor of public accounts, where they could not be lawfully registered unless the election authorizing the donation for which they were issued had been held in pursuance of the statute, and the sworn certificate of the supervisor of the township to that effect had been filed with the auditor. The township has paid the interest on them for three years. Under these circumstances, if they and the coupons thereto attached are in the hands of *bona fide* holders for value, the defences through which the township can escape liability will be reduced to narrow limits.

The charter of the Illinois Southeastern Railway Company declared that any town in any county under township organization might donate to the company any amount not to exceed $30,000. The question is raised by the first assignment of error whether this limit was removed by the amendatory act of Feb. 24, 1869. We think that it was.

Section 10 of the act last named is an entire revision of sections 9 and 10 of the original charter of the company. The original charter authorized townships only to make donations to the railroad company, and it required that the railroad, or some part of it or its branches, should be completed before the donation was paid. It did not authorize the issue of bonds to pay the donations, but required the assessment and collection

of a tax upon all the taxable property of the town for that purpose.

The amendatory act authorized not only townships, but also villages, cities, and counties along the route of the railroad to make donations to the company. It prescribed an entirely different condition precedent to the making of a donation, and required the issue of bonds to pay the donation when made, and it did not require the completion of the railroad, or any part of it, before the bonds were issued. It did not limit the amount which might be donated to $30,000, but declared that if a majority of the votes cast at the election provided for by the act should be in favor of donation, the corporate authorities of the village, city, county, or township, as the case might be, should donate to the company the amount so voted at said election, and issue bonds in payment thereof. It thus appears that sect. 10 of the amendatory act covered the entire subject embraced by sects. 9 and 10 of the original act. It related to the same railroad company; it prescribed different methods of procedure in reference to the same subject, and embraced entirely new provisions, thus plainly showing that it was intended as a substitute, *pro tanto*, for the original act. Sect. 10 of the amendatory act therefore operated as a repeal, by implication of sects. 9 and 10 of the original act, and removed the restriction limiting to $30,000 the amount which could be donated by a township to the railroad company. *United States* v. *Tynen*, 11 Wall. 88; *Henderson's Tobacco*, id. 652; *Murdock* v. *City of Memphis*, 20 id. 590; *King* v. *Cornell*, 106 U. S. 395.

The next question raised by the assignments of error relates to the power of the township of Pana, under the circumstances of this case, to issue the bonds in question. This court decided, in *Harter* v. *Kernochan*, 103 id. 562, that bonds issued by the township of Harter, dated April 1, 1880, signed by the supervisor and countersigned by the clerk of the township, reciting that they were issued in pursuance of the acts of Feb. 25, 1867, and Feb. 24, 1869, which are the acts relied on in this case, and in pursuance of an election of the legal voters of the township held Nov. 10, 1868, were valid obligations of the township.

The power of the township of Pana, under the same acts, to issue bonds to pay its donation to the same railroad company is, therefore, settled beyond dispute, unless what the plaintiff in error insists was a defect in the method of conducting the election by which the donation was voted is fatal to the authority of the officers of the township to issue the bonds. This defect was that the election was presided over and the returns made, not by the supervisor, assessor, and collector of the township, *ex officio* judges of elections, but by a moderator chosen by the electors present.

It is insisted by the plaintiff in error that as the Constitution of Illinois, adopted July 2, 1870, by its second additional section cut off the power of any township or other municipality to subscribe to the capital stock of, or make a donation to, any railroad company, except when such subscription or donation had been authorized under existing laws, by a vote of the people of the municipality prior to the adoption of the Constitution, and as, by reason of the defect just mentioned, there was no legal election, it follows that there was no authority in the officers of the township of Pana to make the donation or issue the bonds in question in this case, and that the bonds are not binding on the township. We cannot assent to this conclusion.

It is clear that this case in no wise differs from other cases where the holding of an election and a vote of the people in favor of an issue of bonds is made by law a condition precedent upon which the authority to issue bonds rests.

The bonds in question in this case recite on their face that they were issued by the township, in compliance with the vote of the legal voters thereof at an election held on April 30, 1870, under and by virtue of the authority conferred by acts of the General Assembly of the State of Illinois, specifying the acts of Feb. 26, 1867, and Feb. 24, 1869, above mentioned.

This court has again and again decided that if a municipal body has lawful power to issue bonds or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has the right to assume that such preliminary proceedings have taken place if the fact be certified

on the face of the bonds by the authorities whose primary duty it is to ascertain it. *Lynde* v. *The County*, 16 Wall. 6; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Commissioners* v. *January*, 94 id. 202; *Commissioners* v. *Bolles*, id. 104; *County of Warren* v. *Marcy*, 97 id. 96.

The authority to issue the bonds in question in this case, resting upon the fact that an election was held in pursuance of law before a certain date, namely, the date when the Constitution of 1870 was adopted, and the bonds reciting on their face the fact that the election was so held before the date mentioned, the circumstance that the election was irregularly conducted can be of no avail as a defence to the bonds in a suit brought by a *bona fide* holder.

Our attention has been called to the decision of the Supreme Court of Illinois in the case heretofore mentioned and reported as *Lippincott* v. *Town of Pana*, 92 Ill. 24, in which it was held that the election relied on in this case as the authority for the issue of the bonds was absolutely void, and the issue of them was, therefore, without authority. Our attention is also called to *People* v. *Town of Santa Anna*, 67 id. 57, and *People* v. *Town of Laenna*, id. 65, where similar elections under a like statute were held void. These last two cases were decided before the bonds in this case were issued. They were, however, suits brought to restrain the issue of bonds by the township officers, on account of the irregularities in the election. The rights of *bona fide* holders could not, therefore, arise, and were not passed on in those cases. But in the case first mentioned the bonds had been issued, and were presumptively in the hands of *bona fide* holders. Nevertheless, the Supreme Court of Illinois held the bonds to be void in whosesoever hands they might be.

It is insisted that this court is bound to follow this decision of the Supreme Court of Illinois and hold the bonds in question void. We do not so understand our duty. ' Where the construction of a State constitution or law has become settled by the decision of the State courts, the courts of the United States will, as a general rule, accept it as evidence of what the local law is. Thus, we may be required to yield against our own judgment to the proposition that, under the charter of the

railway company, the election in this case, which was held under the supervision of a moderator chosen by the electors present, was irregular and therefore void. But we are not bound to accept the inference drawn by the Supreme Court of Illinois, that in consequence of such irregularity in the election the bonds issued in pursuance of it by the officers of the township, which recite on their face that the election was held in accordance with the statute, are void in the hands of *bona fide* holders. This latter proposition is one which falls among the general principles and doctrines of commercial jurisprudence, upon which it is our duty to form an independent judgment, and in respect of which we are under no obligation to follow implicitly the conclusions of any other court, however learned or able it may be. *Swift* v. *Tyson*, 16 Pet. 1; *Russell* v. *Southard*, 12 How. 139; *Watson* v. *Tarpley*, 18 id. 517; *Butz* v. *City of Muscatine*, 8 Wall. 575; *Boyce* v. *Tabb*, 18 id. 546; *Oates* v. *National Bank*, 100 U. S. 239; *Railroad Company* v. *National Bank*, 102 id. 14. See also *Burgess* v. *Seligman*, *ante*, p. 20, where the question, how far the courts of the United States are bound by the decisions of the State courts, is carefully re-examined, and the rule on the subject stated with precision.

We cannot follow the decision of the Supreme Court of Illinois in *Lippincott* v. *Town of Pana*, *ubi supra*, without overruling a uniform current of the decisions of this court, beginning with *Commissioners of Knox County* v. *Aspinwall*, 21 How. 539, and continuing down to the present time. The rights of the *bona fide* holder of negotiable municipal bonds, as we have stated them in this opinion, are too firmly settled by the decisions of this court to be shaken.

Our conclusion is, therefore, that the bonds in question in this case are valid in the hands of a *bona fide* holder, notwithstanding the irregularity in the conduct of the election by which they were claimed to be authorized.

The next question presented by the assignments of error is, Does the irregularity in the conduct of the election throw on the plaintiffs the burden of proving that they are holders for value?

It is a general rule that when the holder of a negotiable in-

strument, regular on its face and payable to bearer, produces it in a suit to recover its contents, and the same has been received in evidence, there is a *prima facie* presumption that he became the holder of it, for value at its date, in the usual course of business. *Murray* v. *Lardner*, 2 Wall. 110; *Bank of Pittsburgh* v. *Neal*, 22 How. 96; *Collins* v. *Gilbert*, 94 U. S. 753; *Brown* v. *Spofford*, 95 id. 474. And municipal bonds, payable to bearer, are subject to the same rules as other negotiable paper. *Cromwell* v. *Sac County*, 96 id. 51.

But the plaintiff in error insists that this case falls within an exception to that rule, and cites to sustain his position *Smith* v. *Sac County*, 11 Wall. 139, and *Stewart* v. *Lansing*, 104 U. S. 505. The exception relied on by the plaintiff in error is well settled, and is this : if, in a suit brought by the indorsee or transferee of a negotiable instrument, the maker or acceptor, or any party who is primarily bound by the original consideration, proves that there was fraud or illegality in the inception of the instrument, the burden of proof is thrown on the plaintiff to show that he is a holder for value. *Smith* v. *Sac County* and *Stewart* v. *Lansing*, *ubi supra; Commissioners* v. *Clark*, 94 U. S. 278; *Collins* v. *Gilbert*, id. 753; *Fitch* v. *Jones*, 5 El. & Bl. 238; *Smith* v. *Braine*, 16 Ad. & E. N. S. 244; *Hall* v. *Featherstone*, 3 Hurls. & Nor. 284; *Bailey* v. *Bidwell*, 13 Mee. & W. 73; *Vathir* v. *Zane*, 6 Gratt. (Va.) 246; *Hutchinson* v. *Boggs*, 28 Pa. St. 294; *Perrin* v. *Noyes*, 39 Me. 384; *Cottle* v. *Cleaves*, 70 id. 256; *Sistermans* v. *Field*, 9 Gray (Mass.), 331; *Woodhull* v. *Holmes*, 10 Johns. (N. Y.) 231; *Ross* v. *Drinkard's Adm.*, 35 Ala. 434; *Harbison* v. *Bank of the State of Indiana*, 28 Ind. 133; *Fuller* v. *Hutchings*, 10 Cal. 523; *Redington* v. *Woods*, 45 id. 406; *Conley* v. *Winsor*, 41 Mich. 253; *Sloan* v. *Union Banking Company*, 67 Pa. St. 470; *Holme* v. *Karsper*, 5 Binn. (Pa.) 469; *Vallett* v. *Parker*, 6 Wend. (N. Y.) 615; *Munroe* v. *Cooper*, 5 Pick. (Mass.) 412; 1 Daniel on Neg. Ins. (3d ed.), sect. 815.

In most of the cases above cited the defence relied on was fraud in the inception of the instrument. Thus, in *Smith* v. *Sac County*, 11 Wall. 139, the report shows that the bonds were issued to a contractor to pay for the building of a courthouse; that the county judge who executed and delivered

them was bribed to do so ; and that the court-house never was built.

In *Stewart* v. *Lansing*, 104 U. S. 505, the county judge, assuming to act under authority of a law of the State, rendered a judgment appointing commissioners to execute bonds of 'the town of Lansing. This judgment was carried by *certiorari* to the Supreme Court, and there 'reversed. The county judge, the commissioners, and the railroad company to which the bonds were ordered to be issued, all had notice of the *certiorari* and the subsequent proceedings under it. Before the judgment of reversal, however, the commissioners, notwithstanding the pendency of the writ, issued the bonds in suit in the case, taking from the company an obligation for their personal indemnity. This court held that as between the company and the town the judgment of reversal was equivalent to a refusal by the county judge to make the original order, and invalidated the bonds.

There is no pretence of any fraud in the inception of the bonds in question in this case. It is not denied that they were issued in good faith and for a valuable consideration. The question, then, arises, Is the irregularity in the conduct of the election such an illegality as throws on the plaintiff the burden to show that he paid value for the coupons ? We are clearly of opinion that it is not.

It will appear from an examination of the cases above cited, in which the defence was illegality in the inception of the instrument, that the illegality which shifts the burden of proof on the holder to prove that he paid value must be something which relates to the consideration of the paper sued on. It must appear that the consideration arose out of a transaction contrary to law, or against public policy. Thus, in *Sistermans* v. *Field*, 9 Gray (Mass.), 331, the illegality which the court held threw the burden on the plaintiff of proving that he gave value for the notes sued on, was the fact alleged by the defendant that they were given in payment for intoxicating liquors sold by the payee of the notes to the defendant in violation of law. Precisely the same illegality was held in *Cottle* v. *Cleaves*, 70 Me. 256, to throw upon the plaintiff, who was indorsee, the burden of showing that he paid value for the note.

So in *Fuller* v. *Hutchings*, 10 Cal. 523, the paper sued on was given for losses at a public banking game called " faro." Gaming was prohibited by statute. It was declared by the laws of California to be a felony in the keeper of the game, and a misdemeanor in the player. In this case the court held that the illegal consideration being admitted, it devolved upon the plaintiff to show that he took the paper without notice and for value.

In the case of *Bailey* v. *Bidwell*, 13 Mee. & W. 73, it was alleged, as matter of defence, that the consideration for the note sued on was an agreement that the payee should not oppose a petition in bankruptcy filed by the defendant, the maker of the note, and that the note was indorsed to the plaintiff without value. The court, by Baron Parke, held the rule to be that if the note was proven to have been obtained by fraud, or affected by illegality, that afforded a presumption that the person who had been guilty of the illegality would dispose of it, and place it in the hands of another person to sue on it, and that such proof casts upon the plaintiff the burden of showing that he was a *bona fide* indorsee for value.

In *Fitch* v. *Jones*, 5 El. & Bl. 238, the note which was sued on by an indorsee was given for a wager on the hop duty. This, the court said, was not within the statute of Anne or any other statutes which prohibit wagers. There was no penalty imposed for such a wager, and, therefore, as between the maker and payee, there was no illegality or violation of law, but it was a mere *nudum pactum*. And the court held that the defendant was bound to prove his plea by showing that the plaintiff did not give value for the note.

The authorities illustrate the rule and show that it does not apply to this case. There was no illegality whatever in the consideration of the bonds in question in this suit. The mere irregularity in the conduct of the election was not such an illegality as is contemplated by the rule, and does not deprive the holder of the coupons of the presumption that he acquired them for value.

The next contention of the plaintiff in error is that the decree of the Circuit Court of Christian County, Illinois, by which the bonds in question were declared void, is binding on the

plaintiffs in this case, and is a bar to the action upon the coupons sued on.

The plaintiffs in this case are citizens of the State of Maine. It is sought to bind them by a decree rendered in a proceeding purely *in personam* in a case in which they were not named as parties, when there was no personal service upon or appearance by them, and when the only pretence of notice to them of the pendency of the suit was a publication addressed to the " unknown holders and owners of bonds and coupons issued by the town of Pana."

It is contended that, under the statutes of Illinois, parties may be thus brought in and a valid personal decree rendered against them. Whatever may be the effect of such a decree upon citizens of the State of Illinois, this court has held that, as to non-residents, it is absolutely void. *Cooper* v. *Reynolds*, 10 Wall. 308; *Pennoyer* v. *Neff*, 95 U. S. 714; *Brooklyn* v. *Insurance Company*, 99 id. 362; *Empire* v. *Darlington*, 101 id. 87.

In a case decided at the present term it was declared by this court, speaking by Mr. Justice Field, that " the courts of the United States only regard judgments of the State courts establishing personal demands as having validity or importing verity when they have been rendered upon personal citation of the party or upon his voluntary appearance." *St. Clair* v. *Cox*, 106 id. 350, 353.

These authorities settle the rule which is conclusive of this question. It would be a reproach to jurisprudence if the rights of citizens of Maine to recover the contents of a chose in action, held and owned by them, could be cut off by a suit in Illinois to which they were not made parties by name, and in which there was no personal service or appearance.

It is insisted by counsel for the plaintiff in error that the decree of the State court recites the fact that the persons made defendants under the designation of " the unknown holders and owners of bonds and coupons issued by the town of Pana," which includes the defendants in error, appeared in that court, and that they are, therefore, concluded by the decree in the case.

There is no pretence that there was any appearance in fact

of the parties referred to. It is sought to conclude them by a loose expression in the decree, which, in our opinion, was clearly not intended to recite their appearance, and is not fairly open to such a construction.

Lastly, it is assigned for error that, in computing the amount due upon the coupons described in the declaration, the court allowed seven per cent interest, the legal rate in New York, where the coupons were payable, instead of six per cent, the legal rate in Illinois, where they were made. There was no error in this. The coupons, after their maturity, bore interest at the rate fixed by the law of the place where they were payable. *Gelpcke* v. *City of Dubuque*, 1 Wall. 175. What we have said covers all the assignments of error. We find no error in the record.

*Judgment affirmed.*