# FULTON

*v.*

# THE DISTRICT OF COLUMBIA.

POLICE REGULATIONS; PAWNBROKERS; STATUTORY CONSTRUCTION.

1.  Sec. 3 of the police regulations of this District promulgated by the Commissioners, prohibiting the redemption of pawned property by its owner within twenty-four hours after the time of the pawning, is not a regulation of the business of pawnbrokers, but is an interference with the owner's right of property, and is not authorized by the act of Congress of January 26, 1887 (24 Stat., 368), nor by the joint resolution of Congress of February 26, 1892, delegating to the Commissioners the power to enact "usual and reasonable police regulations."

2.  The regulations made by the Commissioners of the District of Columbia, relating to pawnbrokers, under authority of the act of Congress of January 26, 1887 (24 Stat., 368), have been repealed and superseded by the direct legislation of Congress, upon that subject, in the act of March 2, 1889 (25 Stat., 1006).

3.  When an act of Congress covers the whole subject of a former one, especially when the later act contains new provisions, the later act will be construed to repeal the former; and the rule of construction is the same when legislation is enacted to supersede municipal ordinances.

No. 132.   Submitted February 7, 1894.—Decided February 21, 1894.

THIS was a hearing on an appeal by the defendant from a judgment of the police court upon a verdict of guilty in a prosecution for a violation of the regulations concerning pawnbrokers. The appeal was pending in the General Term at the time of the creation of this court, and was transferred here by operation of the act of Congress of February 9, 1893. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from the Police Court of the District of Columbia to the General Term of the Supreme Court of the District taken under the law that prevailed in the District before the establishment of our Court of Appeals, and transferred to us from that tribunal by the statute which created this court.

The suit was a prosecution in the Police Court by way of information in the name of the District of Columbia against the appellant, Horace K. Fulton, a pawnbroker, doing business as such in this District, for alleged violation by him of a police regulation made by the Commissioners of the District under a power claimed by them to have been conferred upon them by act of Congress. This power is assumed to have been contained in an act of Congress of January 26, 1887 (24 Stat., p. 368), entitled "An act to authorize the Commissioners of the District of Columbia to make police regulations for the government of said District," by which the Commissioners were "authorized and empowered to make, modify and enforce usual and reasonable police regulations in and for said District, as follows:

"First. For causing full inspection to be made at any reasonable times, of the places where the business of pawnbroking, junk-dealing, or second-hand clothing business may be carried on."

And there follow nine other enumerated classes of subjects with reference to which police regulations were authorized to be enacted, all but two of them having reference directly or indirectly to the use of the streets, avenues and public places of the District. The two exceptions, other than the first which has been above cited, concern the regulation of the storage of inflammable materials and the prohibition of the use of fireworks and explosives.

Under this grant of authority from Congress, the Commissioners made the following regulations, among others:

Sec. 1. "Every pawnbroker, junk dealer, or person engaged in the second-hand clothing business shall keep at his place of business a book or books in which shall be fairly written in English, at the time of each loan or transaction, in the course of his business, an accurate account of such loan or transaction (except in the case of junk dealers as to the purchase of rags, bones, old iron, and paper), setting forth a description of the goods, article or thing pawned, purchased, or received on account of money loaned thereon

or paid therefor; the time of receiving the same; the name and residence of the person pawning, selling, or delivering the same; the terms and conditions of loan, purchase, or receipt thereof, including the period for which any such loan may be made, and all other facts and circumstances respecting such loan, purchase, or receipt; which said book or books shall at all times be subject to the inspection of the major of police or any officer of the Metropolitan Police Force, of the District of Columbia, by him authorized in that behalf.

\*    \*    \*    \*    \*    \*    \*

Ses. 3. "That no property of any kind received on deposit, purchased, or pledged by any pawnbroker, junk dealer, or person engaged in the second-hand business, shall be sold or permitted to be redeemed or removed from the place of business of such pawnbroker, junk dealer, or person engaged in the second-hand clothing business, for the space of twenty-four hours after the transcript and statement provided for in the preceding section shall have been delivered, and that no sales shall be made by junk dealers, and dealers in second-hand personal property, of such property in their possession, until after the expiration of ten days from and after the time at which report has been made to the major of police of the purchase thereof, as provided in these regulations, nor shall such property be disfigured, or its identity destroyed or affected in any manner whatsoever, so long as it continues in pawn, or in the possession of such pawnbroker, junk dealer, or person engaged in the second-hand business."

Subsequently to the promulgation of these regulations, Congress legislated directly upon the subject of pawnbrokers; and by an act of March 2, 1889 (25 Stat., p. 1006), entitled "An act to regulate and license pawnbrokers in the District of Columbia," provided for the licensing of pawnbrokers, whose business before that time seems to have been conducted by tolerance rather than by the sanction of law; regulated the rate of interest which they should be per-

mitted to receive, and in general covered the same field of regulation as the ordinances promulgated by the Commissioners, and substantially to the same effect.    But in the act of Congress there was no such prohibition of the right of redemption from pawnbrokers of pledged or pawned property as was contained in Section 3 of the regulations promulgated by the Commissioners.

By a joint resolution passed by Congress on February 26, 1892 (Richardson's Supplement, Vol. 2, p. 71), Congress further provided "That the Commissioners of the District of Columbia are hereby authorized and empowered to make and enforce all such reasonable and usual police regulations in addition to those already made under the act of January 26, 1887, as they may deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia." Under the authority here granted, the Commissioners reenacted their former regulations, with some amendments and additions, that in relation to pawnbrokers being left as under the previous promulgation.

In this condition of the law, the appellant was prosecuted for a violation of these regulations, which violation consisted in the fact that on October 7, 1892, being engaged in the business of pawnbroker, he received a  watch in pawn, and within twenty-four hours thereafter permitted it to be redeemed and removed from his place of business.    He was found guilty, and sentenced to pay a fine; and thereupon, in accordance with the law as it then existed, having duly taken his bill of exceptions, removed his cause by appeal to the General Term of the Supreme Court of the District of Columbia.

*Mr. Andrew A. Lipscomb* for the appellant.

*Mr. S. T. Thomas*, Attorney for the District, and *Mr. A. B. Duvall*, Assistant Attorney, for the District of Columbia :

1. The first clause of Section 1 of the act of Congress of January 26, 1887, and the enlarged power contained in Sec-

tion 2, of the joint resolution of Congress of February 26, 1892, fully justifies the police regulation drawn in question by this appeal: " That no property of any kind received on deposit, purchased or pledged by any pawnbroker shall be permitted to be redeemed or removed from the place of business of such pawnbroker for the space of twenty-four hours after the transcript and statement provided for in Section 1 of the police regulations shall have been delivered to the chief of police." There can be no doubt as to the reasonableness of this regulation, which was intended to give the police department the opportunity to examine property pledged, before it has been removed or disposed of, with a view to ascertaining whether it has been stolen.

2. It is further submitted that the act of Congress, approved March 2, 1889 (25 Stat., 1006), to regulate and license pawnbrokers in the District of Columbia, although by Section 4 it relates to the same subject, embraced in Section 1 of the police regulations in regard to pawnbrokers, does not repeal or supersede the regulation in question. There is no express repeal by the act of March 2, 1889. The mere fact that Congress, subsequent to the original promulgation of Section 3 of the police regulations, legislated on the same subject without expressing an intention to repeal the regulation goes to show that Congress intended to continue so much of the regulation as was not superseded. There is no conflict between the part of the regulation complained of and the statute. The mere re-enactment of an existing law, in the same or substantially the same terms, without words of repeal, and in the absence of conflict, or an intention to supersede, does not, of course, necessarily repeal the old law. *Alexander* v. *State*, 9 Ind., 337; *Cordell* v. *State*, 22 Id., 1; *Kessler* v. *Smith*, 66 N. C., 154.

Section 3 of Article 1 of the police regulations may well stand with the act of Congress of March 2, 1889, on the same subject. Whilst the fourth section of the act of Congress which requires every pawnbroker to keep a book, in which he shall record at the time of each loan, an accurate

account and description of the goods and articles or things
pawned or pledged, and the amount of money loaned
thereon, etc., together with a particular description of the
person, might be said to supersede Section 1 of Article 1 of
the police regulations. Nor can it have such effect on Sec-
tion 3 of Art. 1 of the regulations. Section 6 of the act of
Congress requires pawnbrokers to keep a record which shall
be open to the inspection of the Commissioners of the Dis-
trict, judges of criminal courts, the major and superintendent
of police, and policemen, duly authorized in writing for that
purpose, who shall exhibit written authority to the pawn-
broker. The act of 1889 does not require that the property
purchased or pledged with a pawnbroker, shall not be sold
or permitted to be sold, redeemed or removed from his
place of business for the space of twenty-four hours after
the transcript or statement from his register shall have been
furnished the police department. It was not necessary, it
seems to us, that it should, nor does the fact that the act of
1889 omits to do so, exclude the idea that the Commis-
sioners under the ample power conferred upon them by the
act of 1887, and the joint resolution of 1892, had not
the power to make such a regulation. It must therefore
be apparent that the regulation in question is reasonable
and proper and that it is not in conflict with the act of
Congress.

Mr. Justice MORRIS delivered the opinion of the Court:

The question in the case is whether the regulation that
has been cited as having been made by the Commissioners
of the District of Columbia in regard to the business of
pawnbrokers, is a valid subsisting regulation, entitled to be
enforced by the courts, in so far as it prohibits the redemp-
tion of pawned property within twenty-four hours after the
time of the pawning.

The purpose of these regulations is the protection of the
community against the numerous larcenies and robberies
that are the disgrace of our civilization and are of too fre-

quent occurrence in our midst, and which are unfortunately too often promoted by the connivance, conscious or unconscious, of persons engaged in the classes of business which it has been sought to subject to these regulations. The moral sense of the community will sanction any regulations, however severe, that have for their legitimate object the destruction of the nefarious business of receiving stolen goods. But in the attempt to protect property, we should not impair the right of property. In the effort to reach the thief and the receiver of stolen property, we have no right to prevent the lawful owner of property from exercising over it all the lawful rights of ownership. Older than the Constitution, older than Magna Charta, older than the Ten Tables, as old as civilization and coeval with the first organization of human society, is that provision of the law of nature that no one should be deprived of life, liberty, or property without due process of law. Antagonistic to this primary principle, which with us has become a constitutional guarantee, is all attempted regulation, however laudable its purpose, that deprives a man of the right to use that of which he is the unquestioned owner; and whether the privation is for twenty-four hours or for twenty-four years, can make no difference in principle. It ought not to be impossible to impound for a limited time property around which there is the suspicion of guilt or the taint of illegality. But in the search for stolen goods, to deprive a lawful owner of the lawful use of property that unquestionably belongs to him, is to do evil in order that good may come of it; and no code of political morality that is entitled to the consideration of honest men can tolerate any such maxim as that.

That the regulation made by the Commissioners of the District of Columbia in this instance, so far as it seeks to prevent the redemption of pawns within twenty-four hours after the act of pawning, or after notice given of it to the police, is a prohibition upon the free use of the property by the owner of it, is too plain for argument.

This is not a regulation of the business of the pawn-broker, but an unjustifiable interference with the owner's right of property. It is attempted legislation, not regulation. It is in fact partial confiscation under the guise of legislation or regulation. Whether Congress itself could make such a provision, in the face of the constitutional guaranty, may well be doubted. But this we are not called upon to decide. We do decide that, when Congress delegated to the Commissioners the power to enact " usual and reasonable police regulations " for the District of Columbia, it did not thereby authorize them to make ordinances that would take the property of citizens away from them even for the short period of twenty-four hours. There is nothing to show that the provision is a usual one; and certainly it is not reasonable. It is in our opinion radically and intrinsically vicious, in violation of constitutional right, and not required by any sound principle of public policy.

That this position is abundantly supported by authority, we need only refer to Dillon on Municipal Corporations, Secs. 319 to 330, and the numerous cases cited in the notes to those sections, the tenor of which is almost uniform in regard to such ordinances or regulations as that now under consideration.

It may be proper to say further that we regard the regulation in question, together with the other regulations in regard to pawnbrokers, as having been repealed as to that class of business, by the direct legislation of Congress upon that whole subject in the act of March 2, 1889, 25 Stat., p. 1006. The repealing clause of this act may not, perhaps, of itself have had this effect. But it is a well-settled rule of statutory construction, that when the later act covers the whole subject of a former one, especially when the later act contains new provisions, this later act will be construed to repeal the former. *U. S.* v. *Tynen*, 11 Wall., 88 ; *Norris* v. *Crocker*, 13 How., 429 ; *Pana* v. *Bowler*, 107 U. S., 529 ; *National Bank* v. *U. S.*, 107 U. S., 445 ; *United States* v. *Claflin*, 97 U. S., 546 ; *State* v. *Stoll*, 17 Wall., 425. And if

this be so with regard to two legislative enactments, how much more should it be the rule of construction when the legislature undertakes, as it did in this case, to supersede the somewhat crude enactments of a subordinate municipal body? It would not be seemly to permit the solemn enactments of the supreme law-making power and the sometimes inconsiderate ordinances of a municipality to come in conflict or to compel the citizen to elect at his risk with which of them he will comply.

It is to be noticed that, so far as there is any substantial difference between the act of Congress and the regulations adopted by the Commissioners, it is that the former, while evidently having in view the regulations of the Commissioners previously adopted, and going over the same subject precisely, has avoided with studious care the features of the regulations that were objectionable on the ground of their infringement of common right and constitutional guarantee. For the act of Congress omits the provision that requires pawnbrokers to retain for a specified time the articles pawned with them even as against the owner seeking to redeem, while it substantially retains all that is unobjectionable in the regulation, almost in the very words of the regulation. Those who formulated the act of Congress evidently appreciated the objectionable and unwarranted character of the legislation attempted by the Commissioners.

We are of opinion that the regulation promulgated by the Commissioners under the supposed authority of the act of Congress of January 26, 1887, and re-enacted by them under the authority assumed to have been given to them by the joint resolution of Congress of February 26, 1892, which undertakes to prohibit pawnbrokers from permitting property pawned by them to be redeemed and removed from their premises within twenty-four hours thereafter, so far as the same prohibits the redemption and removal of pawned property by the owner thereof, is not a reasonable regulation, and is not authorized by either of the legislative enactments to which reference has been made, and is therefore null and void.

We must hold, therefore, that the appellant in this case was held without warrant of law.

*Consequently, the judgment must be reversed, and the cause remanded to the Police Court of the District of Columbia, with instructions to quash the information, and to discharge the accused. And it is so ordered.*