**UNITED STATES of America,**
**Plaintiff.**

v.

**McDONALD GRAIN AND SEED COMPANY, a corporation; Cecil McDonald; Public Service Commission of the State of North Dakota; The McCabe Company, a corporation; Tri-State Mutual Grain Dealers Fire Insurance Company, a corporation; and American Surety Company of New York, a corporation, Defendants.**

**Civ. No. 2997.**

United States District Court
D. North Dakota, Southeastern Division.

Nov. 18, 1955.

Robert L. Vogel, U. S. Atty., Fargo, N. D., and Ralph B. Maxwell, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Mort B. Skewes, Luverne, Minn., and Herbert G. Nilles, of Nilles, Oehlert & Nilles, Fargo, N. D., for defendant Tri-State Mut. Grain Dealers Fire Ins. Co.

DAVIES, District Judge.

This is an action brought by the United States on a claim of the Commodity Credit Corporation against six defendants including Tri-State Mutual Grain Dealers Fire Insurance Company, a Minnesota corporation authorized to do business in North Dakota.

The claim against the insurance company arose out of a warehouse fire at Barney, North Dakota, on 14 June 1954 which destroyed merchandise worth $892.80 and Commodity Credit Corporation grain valued at $42,622.29. The liability of the company is based on the terms of its fire policy, insuring the defendants, McDonald Grain and Seed Company and McCabe Brothers Company (succeeded by The McCabe Company), as their interests might appear. Under this policy loss was payable sixty days after filing proof of loss. The proof was filed on 29 June 1954, and the company conceded that its liability accrued on 27 August 1954.

The instant action was commenced by the United States on 10 August 1954. On 13 January 1955 the United States filed its amended complaint demanding $42,622.29 plus interest from 14 June 1954. Service of the amended complaint was made upon the insurance company on 17 January 1955. On 7 February 1955 the company served its separate answer, admitting liability under the insurance policy to pay $43,515.09, but contending that no interest was payable because the money was being held awaiting the decision of the Court as to entitlement.

On 14 March 1955, pursuant to Federal Rules of Civil Procedure, Rule 67, 28 U.S.C.A., the insurance company filed its notice of motion, to be heard on 21 March 1955, for an order permitting the deposit in Court of $43,515.09 plus such interest and costs as might be required by the Court. The Clerk of this Court promptly informed the company's Minnesota attorney that U. S. Circuit Judge Charles J. Vogel, sitting by assignment, had disqualified himself from hearing the motion, and appointment of a new Judge was being awaited; and that it would be necessary for the company attorney to associate local counsel. On 28 March 1955, shortly after securing local counsel, the company attorney died, and it was not until the end of June, 1955, that a new company attorney from Minnesota made an appearance.

Hearing of the motion eventually was held on 9 September 1955. Attorneys for the company argued against the imposition of interest and moved that the company be permitted to deposit the principal sums into Court and then be dismissed from the action. The Court took the matter under advisement, requesting concurrent briefs on the problem of interest to be filed by 29 September 1955.

The problem is whether an insurance company must pay interest on a liquidated insurance debt which it voluntarily retained as a stakeholder for seven months without taking any action, while conflicting claims were being asserted in the courts, and for nearly the same length of time after filing a notice of motion to deposit the money into Court.

As a general rule, interest on money is allowed (1) when provided for by contract, (2) when authorized by statute, or (3) when treated as an ele-

ment of compensatory damages for wrongful detention of money by a party liable to pay. New York Life Ins. Co. v. Cooper, D.C.N.Y.1944, 76 F.Supp. 976, 979.

(1) Interest is not allowable by contract in the present case since there was no express contract requiring the insurance company to pay interest on the insurance proceeds from the date liability accrued, but it is allowable by statute or as damages.

(2) By statute in North Dakota it is provided: "Interest for *any legal indebtedness* shall be at the rate of four percent per annum unless a different rate not to exceed [7%] is contracted for in writing." N.D.Rev.Code (1943) Sec. 47–1405, first sentence (italics supplied). Interest is defined as "the compensation allowed for the use, or forbearance, or detention of money, or its equivalent." Id. Sec. 47–1404. Another statute provides: "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, *with interest thereon.*" Id. Sec. 32–0310 (italics supplied). This Court relied on that statute in Drexel State Bank v. City of La Moure, D.C.N.D.1913, 207 F. 702, as the basis for holding that where no interest upon a contractual obligation to pay money is expressly specified for the period after maturity, the obligation shall bear interest from maturity at the legal rate fixed by statute in North Dakota.

Although the insurance company in the present case did not expressly contract to pay a specified rate of interest, the rate authorized by statute is applicable because of the company's failure to pay the loss when due. The legal rate at the place of payment is regarded as the agreed rate. Pana v. Bowler, 1883, 107 U.S. 529, 2 S.Ct. 704, 27 L.Ed. 424; Restatement, Conflict of Laws (1934), Secs. 418 and 413; Goodrich, Conflict of Laws (3d ed. 1949), 256. In other words, where the insurance contract contains no express provision as to interest, the legal rate at the place of performance will be read into the contract.[1] Therefore, by its breach of contract in failing to pay over the proceeds, the insurance company is obligated by statute to pay interest at the rate of 4% on the loss from the date it became due under North Dakota law.[2]

(3) Even in the absence of statute, under a fire insurance contract interest is ordinarily recoverable as damages from the date the insurance company becomes liable to pay the loss. Concordia Ins. Co. of Milwaukee v. School Dist. No. 98 of Payne County, 1931, 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528; J. Purdy Cope Hotels Co. v. Fidelity-Phenix Fire Ins. Co., 1937, 126 Pa.Super. 260, 191 A. 636. See Restatement, Contracts (1932), Sec. 337: When Interest is Recoverable as Damages. The theory is that when liability accrues the insurance company is no longer entitled to the insurance proceeds, and it receives an unmerited benefit by its use of the funds thereafter. See Twohig v. Lawrence Warehouse Co., D.C.Iowa 1954, 118 F. Supp. 322, 330; Restatement, Restitution (1937), Secs. 156 and 157; Restatement, Torts (1939), Sec. 913.

Interest will be allowed on equitable considerations to prevent unjust en-

1. See Larkin v. Glens Falls Ins. Co., 1900, 80 Minn. 527, 531, 83 N.W. 409, 410, where the court, in reading the restrictions of city ordinance into a fire insurance contract, stated: "This is in line with the general doctrine that, where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract."

2. Pearl Assur. Co. v. School Dist. No. 1, 10 Cir., 1954, 212 F.2d 778.
   See Lyle v. Latourette, 1946, 209 Ark. 721, 192 S.W.2d 521, 527, which reversed a disallowance of interest for the 7 months the case was being considered by the lower court, and held that "when interest once begins to run on a claim, it continues to run pending decision by the courts, if the delay is not the fault of either party."

858

richment even though neither the insured nor the company has consciously acted wrongly. In Thorp v. American Aviation & General Ins. Co., D.C.Pa.1953, 113 F. Supp. 764, where the insured owners of a motion picture theater brought action against six insurance companies to recover for destruction of the theater by fire, and the amount of the loss was uncertain because of honest differences of opinion among the owners and the companies, the court nevertheless held that the companies were liable to pay 3% interest because they had use of the money for over two years. The Court stated that "to financial institutions (like banks), and to *semi-financial institutions (like insurance companies)* which derive much of their income from interest or capital gains on investments, money is the means through which income is derived. All the time the defendant insurance companies have been withholding payment they have had the *use of the money* due to the plaintiffs *with the consequent possibility of realizing income therefrom.* At the same time plaintiffs have not had the use of the money and have not had the opportunity to derive income from it. Under the circumstances, it would not be fair and just to refuse an allowance of interest to the plaintiffs." 113 F.Supp. at page 766 (italics supplied). The Court in that case expressly exercised discretionary power not only in awarding interest but in determining the rate of interest; and imposed interest at less than the legal rate because the insurance companies had not been unreasonable in their handling of the matter.

Different considerations would, of course, apply in the case of an insurance company acting with reasonable diligence. In New York Life Ins. Co. v. Cooper, D.C.N.Y.1944, 76 F.Supp. 976, where the insurance company on a life policy was constantly being advised by the parties that negotiations between conflicting claimants were approaching a settlement, and it did not interplead the claimants until over a year after the loss became payable, the court held that the company would not be required to pay interest because it had not been negligent in relying on the information concerning the expected settlement. The Court stated, 76 F.Supp. at page 979: "It was to the benefit of the claimants that an action for interpleader be not filed, that they be not put to this additional expense and that they be afforded every opportunity to compose their differences. Plaintiff should not be penalized for acceding to their desires. * * * In making this decision I have in mind the opinion of Cardozo, C. J., in Prager v. New Jersey Fidelity & Plate Glass Ins. Co., 245 N.Y. 1, 156 N.E. 76, 52 A.L.R. 193, in which he pointed out that if a claimant is to be made whole, interest should be awarded since he has been without the use of the funds while such use was enjoyed by the withholding party. This rule must give way when considerations of equity and justice demand it * * * and that demand is here present."

Interest will ordinarily be allowed on the ground that the company was in default and had use of the money. But it may not be allowed, in the discretion of the court, if the insurance company was actually prevented from disposing of insurance proceeds. See Bowman v. Wilson, C.C.Mo.1882, 12 F. 864. In Illinois Bankers Life Assur. Co. v. Blood, D.C.Ill. 1947, 69 F.Supp. 705, where the insurance company on a life policy under which liability accrued on 17 December 1941 was prevented from interpleading conflicting claimants because one of them was in military service, and it commenced its interpleader action as soon as such claimant returned from service in 1946, the court held that even though the insurance company had the use of the money for over 4 years it would not be required to pay interest on the proceeds because it was an involuntary stakeholder.

As a general rule, however, a stakeholder has an affirmative duty promptly to dispose of money by any available judicial method, and will be held liable for interest while having bene-

ficial use of the money. In Bank of China v. Wells Fargo Bank & Union Trust Co., 9 Cir., 1953, 209 F.2d 467, where the Wells Fargo Bank was presented with conflicting demands by the governments of Nationalist China and Communist China for large deposits of the Bank of China, and though having a number of judicial remedies under State and Federal law, it delayed about a month before commencing an interpleader action which did not result in a court deposit until some eleven months after the demands were made, the court held that the bank was required to pay interest on the principal at the California legal rate of 7% for the period from the accrual of liability at the time of the demands, to the date of the deposits in court. The Court stated: "We do not see how any circumstances could relieve Wells Fargo of its liability for interest during the period between the various demands and the deposits into court. *During this period, Wells Fargo was enjoying the beneficial use of this money.* It could be used to satisfy the reserve requirements, to make investments upon which interest would be drawn, or for any other banking purpose. *There is no showing that Wells Fargo set aside or in any other way restricted the use of the funds deposited by the Bank after demand was made."* 209 F.2d at page 472 (italics supplied).

Where a stakeholder adopts a judicial method of disbursing money a risk of error is assumed, and there will be no right to reduce or defeat interest simply because the method may not have been the best or may have been attended by long delays. Bank of China v. Wells Fargo Bank & Union Trust Co., 9 Cir., 1953, 209 F.2d 467, 475; Petition of Republic of United States of Brazil, D.C. N.Y.1950, 91 F.Supp. 964. For these delays interest is the measure of damages. By statute in North Dakota it is provided: "Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt." N.D. Rev.Code (1943) Sec. 32–0304: Interest on Damages. In Jacobson v. Mutual Ben. Health & Accident Ass'n, 1941, 70 N.D. 566, 586, 296 N.W. 545, 557, a case holding that the beneficiary of an insurance policy was entitled to interest on insurance proceeds from the date they were payable, the North Dakota Supreme Court declared: "This statute fixes interest as the measure of damages for the retention of money that is due and payable to another * * * and prescribes the circumstances in which the person to whom the money is payable is entitled to interest as a matter of right." This case determined that, as a matter of law in North Dakota, interest is recoverable as compensatory damages from the date the insurance company became liable to pay the loss under the insurance contract.

In the present case the insurance company failed to forego the use and benefit of the insurance proceeds, and it did not act with reasonable diligence in attempting to dispose of them. The insurance company contends that interest should not be imposed, based upon the tenuous argument that it was "ready, willing and able to pay the loss in full ever since it has become due, but has been prevented from doing so by the conflicting claims of the parties". As a matter of logic the company *would not be able* to pay if prevented from doing so. It must be determined whether the company was, in fact, prevented from paying the loss.

Even though this action was commenced about the time the loss became payable in August, 1954, the insurance company failed for some five months to file a responsive pleading or make any kind of motion; it did nothing in the action until after the United States filed its amended complaint in January, 1955. Not until about seven months after the loss became payable did the company, in March, 1955, commence proceedings under Civil Rule 67 to deposit the money in court.

Not until then was a local firm associated with the insurance company attorney. About that time the first company attorney died, but the second company attorney made no appearance until the end of June, 1955, ten months after liability accrued. Still no diligent effort was made to bring this matter on for hearing, the reason assigned being there was no Judge to hear the motion.

However, the fact is that there was a Judge available. In an appointment dated 24 August 1954 and filed with the Clerk of this Court, the Chief Judge of the U. S. Court of Appeals for the Eighth Circuit designated by name four Minnesota U. S. District Judges to hold court in the District of North Dakota from 26 August 1954 to 26 August 1955. Actually nothing prevented the insurance company from paying the proceeds over.

■■■ There were Judges available, and there were adequate remedies (1) by statutory interpleader under 28 U.S.C.A. § 1335, (2) by interpleader under Civil Rule 22, or (3) by motion to deposit under Civil Rule 67. The function of all these remedies is to enable a stakeholder conceding liability to dispose of money or property without being subjected to multiple suits by conflicting claimants. The purpose of interpleader by statute and rule is to provide such remedy even before any lawsuits have been commenced, although under Rule 22(1) a defendant subjected to adverse claims in an action is authorized to interplead by way of cross-claim or counterclaim. The purpose of Rule 67 is to permit a stakeholder in a pending action, by simple preliminary motion, to deposit the money in court for ultimate disposition, and thus avoid the expense and delay of litigation. These complementary rule and statutory remedies afford an insurance company adequate protection against conflicting claimants. See Vance, Insurance (3d ed. by Anderson 1951), 690.

■■■ With such remedies available, there must be no unjust enrichment for hesitation or delay. There is no statute, or rule of court or conscience, which permits a stakeholder voluntarily to hold and use money while awaiting the final decision of a court on the question of who is entitled to the money. For the voluntary and unnecessary detention of insurance proceeds by the insurance company in this case, the Court feels the allowance of interest as compensatory damages would be proper, even if there were no statute in North Dakota authorizing interest.[3]

Upon the theory of compensatory damages for detention of money as well as the theory of statutory compensation for the use of money, the motions to deposit insurance proceeds and for dismissal as a party defendant in this action are granted upon condition that the defendant Tri-State Mutual Grain Dealers Fire Insurance Company deposit with the Clerk of this Court the sum of $43,515.09 together with interest thereon at the rate of 4% per annum for the period from 27 August 1954 to the date of such deposit.

It is so ordered.

3. See Royal Neighbors of America v. Lowary, D.C.Mont.1931, 46 F.2d 565, where, in denying statutory interpleader on the ground of laches, the court held that an insurance company after a delay of over 12 months would be obligated to pay interest at the legal rate, *in spite of an insurance contract provision against interest.*