**MARINE SUPPLY CORPORATION**
v.
**FIREMEN'S INSURANCE COMPANY**
and
**Marine Enterprises Corporation.**
Civ. A. No. 2159.

United States District Court
S. D. Texas,
Corpus Christi Division.
March 11, 1964.

Fischer, Wood, Burney & Nesbitt and James R. Harris, Corpus Christi, Tex., for plaintiffs.

Keys, Russell, Keys & Watson, Corpus Christi, Tex., M. W. Meredith, Jr., Corpus Christi, Tex., for defendant Firemen's Ins. Co.

Richard D. Hatch, Aransas Pass, Tex., and Morrill & Patton and Dean Patton, Beeville, Tex., for defendant Marine Enterprises Corporation.

GARZA, District Judge.

This is a three-cornered lawsuit filed by the Plaintiff Marine Supply Corporation against the two Defendants, Firemen's Insurance Company and Marine Enterprises Corporation. The Plaintiff Marine Supply Corporation is seeking to recover against Firemen's Insurance Company for fire loss, and is seeking to have its liability as lessee under a written lease with the Defendant Marine Enterprises Corporation held to be terminated.

The original suit was brought by Marine Supply Corporation in the State Court, and in response to a plea of lack of necessary parties, two additional parties have been joined as plaintiffs, such parties being R. C. Thwing and C. J. Roy. The case was removed to this Court by Firemen's Insurance Company.

One H. R. Hall was President of Marine Supply Company, and apparently sold his business to Marine Supply Corporation of which R. C. Thwing and C. J. Roy were the principal stockholders and directors.

At the time the Marine Supply business was transferred by Hall to Thwing and Roy, doing business as Marine Supply Corporation, he also entered into a lease agreement dated the 1st day of September, 1960, under 'which Marine Supply Company, a corporation with H. R. Hall as its President, and which is now Marine Enterprises Corporation, was Lessor, and Marine Supply Corporation, R. C. Thwing and C. J. Roy were Lessees. Under this lease a building was leased to Marine Supply Corporation and Thwing and Roy. Said lease provided that the Lessee would lease the building for a period of five years for $21,000.00 with the rent to be payable at the rate of $350.00 a month in advance. One part of the building leased was used for the marine supply store, a small portion was used for a machine shop, and another portion of the building was used as a warehouse and door shop. The building also contained Mr. Hall's apartment, which was not part of the lease.

On August 16, 1962, a fire occurred on the leased premises. Marine Supply Corporation had obtained a fire policy from Firemen's Insurance Company, being Policy No. SP 10325. A loss payable clause in favor of Marine Enterprises Corporation was added to the said policy of insurance. There is no question that substantial damage was done to property covered by said policy of insurance, and to this date no payment has been made by the Defendant Firemen's Insurance Company under the same.

It has been stipulated by the parties that the Plaintiff Marine Supply Corporation has incurred a loss of $44,093.40 under the terms of said policy, and that such amount constitutes a valid claim under the same. It has also been stipulated and agreed that Marine Enterprises Corporation has incurred a loss of $625.00 under the terms of the same insurance policy, and that such amount constitutes a valid claim under the same.

The following questions are before the Court for determination:

1. Is the lease of September 1, 1960, by and between Marine Enterprises Corporation, successor to Marine Supply Company, as Lessor, and Marine Supply Corporation and R. C. Thwing and C. J. Roy, as Lessees, still in existence?

2. Is the Plaintiff Marine Supply Corporation entitled to interest on the proceeds of the insurance policy in question?

3. Were other items belonging to Marine Enterprises Corporation detroyed in the fire, covered by the insurance policy in question?

We will discuss these issues separately.

### THE ISSUE OF WHETHER THE LEASE IS IN EFFECT OR NOT

The lease in question had a fire clause which was Provision No. 5 of the same, which reads as follows:

"5. That the Lessee shall, in case of fire, give immediate notice to the Lessor, who shall thereupon cause the damage to be repaired forthwith; but if the premises be by the Lessor deemed so damaged as to be unfit for occupancy, or if the Lessor shall decide not to repair the said damages or rebuild or remodel the said building, the lease shall cease, and the rent shall be paid to and including the date of the said fire; and the Lessor shall have a lien as security for the rent as aforesaid upon all the goods, wares, chattels, implements, fixtures, furniture, tools and other personal property which are or may be put upon the demised premises."

The Supreme Court of the State of Texas has adopted an opinion of the Commission of Appeals in which said identical provision has been construed. Senter v. Dixie Motor Coach Corporation, 128 Tex. 389, 97 S.W.2d 945. In this opinion the Court held that even though the lessor was given the power

to decide whether the damage by fire to the building made it unfit for occupancy, the lessor had to act in good faith, and if in truth and in fact the building leased had been made unfit for occupancy by the lessee for the purposes that the lease had been made, that any decision to the contrary by the lessor to go ahead and remodel, repair or rebuild in order to hold the lessee responsible under the lease would not be upheld.

The Plaintiff Marine Supply Corporation alleges that the building was unfit for occupancy as a matter of law. With this contention, the Court agrees.

The main business of the Lessees was the operation of a marine supply store, and the machine shop and warehouse and door shop were only incidental to the main business of the Lessees. The only entrance for the general public from the street was on the part of the building leased where the marine supply store was conducted. All other entrances to the leased premises were from the wharf side of the building.

■■ From the evidence before me, I find that all that portion of the leased premises where the marine supply store was conducted was made unfit for occupancy by the Lessees as a marine supply store. The allegations of the Lessor, Marine Enterprises Corporation, that fifty per cent of the building leased, and being that part used by the Lessees as a machine shop and a warehouse and door shop, were not destroyed by the fire and were fit for occupancy, does not alter my finding that the premises were unfit for the conduct of a marine supply store, which was the main business of the Lessees.

I further find that at the time of the fire, Mr. R. C. Thwing, one of the Lessees, talked to Mr. H. R. Hall, President of Marine Enterprises Corporation, notified him of the fire, and Mr. Hall agreed that the premises were unfit for occupancy as a marine supply store and decided not to rebuild or remodel, and proceeded to make a new agreement to lease to the Plaintiff the undamaged portion of the building for storage at the rate of $200.00 per month on a month to month basis.

■ Defendant, Marine Enterprises Corporation, contends that because of the Statute of Frauds (Art. 3995, Revised Civil Statutes of Texas), the Plaintiffs could not alter, except in writing, the terms of the lease of September 1, 1960. This contention is not well taken, for the evidence shows that the lease of September 1, 1960, was terminated, and the new lease arrangement was a new agreement altogether between H. R. Hall, President of Marine Enterprises, and R. C. Thwing representing the Plaintiff Marine Supply Corporation.

A few days after the fire, H. R. Hall was killed, and in his possession was found a check for $16,388.35 which included principal and interest on the indebtedness of Marine Supply Corporation to Marine Enterprises Corporation, successor to Marine Supply Company, and also an item of $200.00 for rent. This check—which is Exhibit P–8—was turned over to an attorney and was credited to the account of the payee in accordance with the payee's instructions by the First State Bank of Aransas Pass, Texas, which apparently had a note of the Defendant Marine Enterprises Corporation and/or H. R. Hall. This exhibit lends credence to the finding that a new agreement had been made by the Plaintiff and the Defendant regarding the leasing of the warehouse and machine shop part of the building which was not damaged by fire.

I conclude and find, therefore, that the lease of September 1, 1960, was no longer in effect after the fire, and the Plaintiffs, Marine Supply Corporation and R. C. Thwing and C. J. Roy, are relieved from any of their obligations under it.

## THE QUESTION OF WHETHER FIREMEN'S INSURANCE COMPANY MUST PAY INTEREST ON THE PROCEEDS OF THE POLICY TO MARINE SUPPLY CORPORATION.

Firemen's Insurance Company alleges that it attempted to pay the losses under

the policy that it has stipulated it is liable for, by a joint check made payable to Marine Supply Corporation and Marine Enterprises Corporation, but that it was informed by Marine Supply Corporation that it would not receive a check made payable to both them and Marine Enterprises Corporation. Marine Supply Corporation alleges that the reason it did not want to accept said check was because Marine Enterprises Corporation wanted $5,000.00 for the property that it claimed was damaged in the fire and covered by the policy.

The loss payable clause of the policy reads as follows:

### "LOSS PAYABLE CLAUSE

"Loss, if any due to the insured under the terms and conditions of this policy to be payable to Marine Enterprises Corporation, Box 665, Aransas Pass, Texas as interest may appear.

· "Attached to and forming part of Policy No. SP 10325 of the Firemen's Insurance Company; issued at its Aransas Pass, Texas Agency.

"Dated July 20, 1962.
　　　　"LEILA COLE　Agent
　　　　Cole Insurance Agency"

■ I find that under the facts before the Court, Marine Supply Corporation had a perfect right to deny the tender of a check made payable to them and to Marine Enterprises Corporation, for there still remained a dispute between Marine Enterprises and Firemen's Insurance Company over the amount coming to it, and there was no reason for Marine Supply Corporation to inherit or participate in the dispute between the Insurance Company and Marine Enterprises Corporation.

I find that Marine Supply Corporation filed proof of loss with Firemen's Insurance Company in the amount of $44,093.40, which Firemen's admits that it owes Marine Supply Corporation, on September 13, 1962.

■ Firemen's Insurance Company had no reason to deny the proof of loss as submitted on September 13, 1962, and under the terms of the policy had sixty days in which to pay this loss.

I, therefore, conclude that Firemen's Insurance Company must pay interest at the rate of six per cent (6%) per annum on $44,093.40 from and after November 13, 1962.

To allow Firemen's Insurance Company to maintain that it does not owe interest on the amounts to be collected under their policy of insurance, would be to allow them an unjust enrichment. Bank of China v. Wells Fargo Bank & Union Trust Co., 9th Cir., 1953, 209 F.2d 467, 48 A.L.R.2d 172; Prager v. New Jersey Fidelity & Plate Glass Insurance Co., 245 N.Y. 1, 156 N.E. 76, 52 A.L.R. 193; United States v. McDonald Grain & Seed Co., D.C., 135 F.Supp. 854; Twohig v. Lawrence Warehouse Co., D.C., 118 F.Supp. 322.

### WERE OTHER ITEMS BELONGING TO MARINE ENTERPRISES CORPORATION DESTROYED IN THE FIRE, COVERED BY THE INSURANCE POLICY? ·

The items in question and their value are as follows:

| | |
|---|---:|
| 1 – National Adding Machine | $ 550.00 |
| 7 – Merchandise bins at $400.00 each | 2,800.00 |
| 1 – Couch | 150.00 |
| Counters and Bins holding blocks | 500.00 |
| 1 – Hoover Vacuum Cleaner | 120.00 |
| 1 – Kelvinator Refrigerator, 11' capacity | 198.00 |
| 1 – Alvin Transistor Radio | 49.00 |
| | $4,367.00 |

The coverage under the policy in question reads as follows:

"BE 22

"ENDORSEMENT

"This endorsement, effective 8–31–61 M , forms a part of policy No. SP 10325 issued to Marine Supply Corporation by Firemen's Insurance Company

"The first paragraph of Clause 1 of the Equipment Dealers form is amended to read as follows:

"Mobile equipment consisting principally of bulldozers, road scrapers, tractors, pneumatic tools, compressors, industrial motors, pumps and other industrial machinery and supplies, including accessories therefor, attached or otherwise, the property of the Assured and the property of others in the custody or control of the Assured, for sale, display, demonstration, storage, service, repair or for the purpose of performing work thereon."

In order to bring themselves within the coverage provisions of the policy, Marine Enterprises Corporation alleges that the property in question was insured because it was property of others in the custody or control of the assured, which was held for display and storage.

If all property of the assured and all property of others in the custody and control of the assured had been intended to be covered, the policy would have said so.

I find that the policy only included "mobile equipment consisting principally of bulldozers, road scrapers, tractors, pneumatic tools, compressors, industrial motors, pumps and other industrial machinery and supplies, including accessories therefor, attached or otherwise."

The National adding machine was being used by Marine Supply Corporation in its business; so were the merchandise bins being used to display merchandise belonging to Marine Supply Corporation. The radio, the couch, the refrigerator and the vacuum cleaner were also being used by people in Marine Supply Corporation, but I find that none of these items come under the coverage of the policy, since they were not industrial machinery and supplies or accessories therefor. Finding that none of the items in question were such, I conclude that they were not covered under the terms of the existing policy of insurance.

I find, further, that under the stipulation, Marine Enterprises Corporation is entitled to recover the stipulated amount of $625.00, with interest thereon from November 14, 1962, at the rate of 6% per annum, since as early as September 14th, Firemen's Insurance Company recognized that they owed Marine Enterprises said sum of $625.00.

These will constitute my Findings of Fact and Conclusions of Law.

Attorneys for the Plaintiffs will prepare and submit to the Court an appropriate judgment for entry in accordance with these Findings and Conclusions.